BREAUX, C. J.
Plaintiffs brought this suit to recover the sum of $8,460.81 from the city of New Orleans and the firm of F. A. Noullet & Co. for subcontract work.
In August, 1901, Noullet & Co., defendants, since represented by receivers, entered into a contract with the city of New Orleans for the erection by them for the city of a building, and to do appurtenant works thereto, now known as the “House of Detention.”
The price agreed upon between the city and these defendants was the sum of $112,-000.
On the 22d day of the same month, F. A. Noullet & Co. entered into two contracts or subcontracts with one of the plaintiffs, George Selby, in accordance with which he was to perform certain paving work as per contract and specifications, for which he was to be paid the sum of $7,000.
Selby also entered into a subcontract with Noullet & Co. to put in the plumbing and heating work of the building, for which he was to be paid $10,000.
Some time after these subcontracts had been entered into, M. C. Sintes became the transferee to Selby of one-half of the contract.
These parties (Selby and Sintes), as plain-. tiffs, also claim to have done some special work, for which they claim an additional amount.
Plaintiffs (Selby and Sintes) aver substantially that they have complied with all the terms of their contract, that they have only been paid in part, and that the amount for which they sue is the balance due to them.
The defendants Noullet & Co. deny that plaintiffs carried out their contract with them, and they aver that they are not indebted to plaintiffs; but, on the contrary, *903 plaintiffs are indebted to them in a considerable sum. They aver, in substance, that plaintiffs’ work was unsatisfactory and not what it should have been; that -they abandoned their contract, rendering it necessary for others to complete the work which they had in their subcontract promised to do; that they were placed in default in March, 1903.
These defendants, after allowing certain credits, claim a sum in reconvention of $14,-524.77. •
The company of Noullet & Co., it will be stated here, furnished to the city of New Orleans an indemnifying bond to indemnify the city of New Orleans in case of its failure to perform its contract.
This bond was signed by the National Surety Company as surety.
This bond is not particularly of importance in this case, except as relates to two asserted indemnitors, to which reference will be made hereafter.
The plaintiffs Selby and Sintes furnished an indemnifying bond to Noullet & Co., signed by the National Surety Company.
In their answer Noullet & Co. set forth substantially that the National Surety Company are bound in solido with plaintiffs for the performance of the subcontract, and they ask that the company be made parties to this suit.
The city of New Orleans, the other defendant, in her answer, joined issue and alleged substantially that she is only a stakeholder and asked for a dismissal of the suit in so far as she was concerned.
The National Surety Company made defendant, as just stated, at first pleaded an exception and specially averred that it had not bound itself in solido with the plaintiffs. The exception will be more particularly referred to hereafter.
This exception was overruled.
This company then filed its answer, denying all liability to plaintiffs, and also denied the averment of indebtedness to Noullet & Co., defendant.
The surety company, in its answer, averred, as relates to plaintiffs Selby and Sintes, that they failed to carry out their contract with Noullet & Co.; that their work was defective and unskillful; and that it was not accepted by the proper authorities representing the city of New Orleans. The company denied that it bound itself in solido with the contractors.
In its answer it goes into details, and avers in what respect the work was defective and unskillful and the material inferior; that it became necessary because of all these deficiencies for 'the surety company to take a hand and assist in completing the contract in order to prevent greater loss; that it, with the aid of Noullet & Co., completed the work for which the contract called.
The surety company avers that Noullet & Co. are entitled to compensation for the work they did, and that they should be paid for the expenditures and allowed a commission.
As regards the indemnity bond which this company signed for plaintiffs Selby and Sintes, it avers that plaintiffs have not paid the premiums; and, further, that, in consideration of its guaranty of the subcontracts of plaintiffs for the plumbing and heating, it has an indemnity bond, one in the sum of $2,500, signed by Jos. C. Boylan, and the other in the sum of $1,500, signed by E. M. Stafford.
It asks that these parties be made parties to this litigation.
These parties, called in at the instance of this company, filed exceptions, which were overruled.
The asserted indemnifying instrument, signed by Stafford and Boylan, is peculiar. *905 It reads: That in. consideration of the premises they signed the instrument, to wit:
“We have requested the National Surety Company, a corporation under the state of New York, to sign a bond. We will pay in cash to the company for the execution of said instrument the annual premium charged [stating the amount of the premium]; that we will indemnify the surety company from all liability by reason of having executed the said instrument.”
In order to more closely group the issues, we will reiterate in few words.
Selby and Sintes sue for a balance due on their work.
Noullet & Co. deny that they are indebted therefor. They ask for judgment in reconvention.
The surety company, by whom bonds were furnished to indemnify Noullet & Co., is made a party at the instance of Noullet & Co.
The surety company interposed an exception that it is a third person to the controversy.
That exception having been overruled, they filed their answer. They seek to have Stafford and Boylan made parties.
Stafford and Boylan pleaded misjoinder.
This exception was overruled.
They answered denying their indebtedness.
Briefly stated, our learned brother of the district court dismissed as of nonsuit the plaintiffs’ suit against the city of New Orleans. He rendered judgment in favor of plaintiffs against the receivers, Bernard Bruen and Edgar M. Cahn, of Noullet & Co. in the sum of $5,802.26, with interest from Judicial demand.
The reeonventional demand of Noullet & Co., through their receivers before named, was sustained to the amount of $3,837.67, with interest from judicial demand.
He pronounced judgment in favor of the National Surety Company against the receivers of Noullet & Co. for the balance found to be due by F. A. Noullet & Co. to G. Selby and M. C. Sintes; say the sum of $1,964.59, with interest from judicial demand.
He pronounced judgment in favor of the National Surety Company against G. Selby and M. C. Sintes in solido in the sum of $5,322.55, with interest from July 1, 1903, subject to a credit of what ever sum may be paid by the receivers to F. A. Noullet & Co. under the last above paragraph.
His judgment dismissed the demand of Bernard Bruen and Edgar M. Cahn against the National Surety Company.
He rendered judgment in favor of F. A. Noullet & Co., Joseph C. Boylan, and E. M. Stafford, dismissing the demand of the National Surety Company as to them.
The receivers of Noullet & Co. appealed; also the National Surety Company.
In this court plaintiffs and appellees answered the appeal, and asked that the judgment appealed from be amended by increasing the amount thereon allowed from $5,802.26 to $8,460.81, with interest. And they ask further, that the demand of the defendants and appellants and of the National Surety Company against them be rejected, and appellants condemned to pay all costs.
In this court E. M. Stafford moved to dismiss the appeal to the extent that he is concerned on the ground that the court is without jurisdiction ratione materise, “as the demand 'in warranty of the said National Surety Company against him is $1,500.”
The grounds of this motion to dismiss will be considered later.
There are defenses of a preliminary nature that we postpone, to be taken up later.
The amounts between the plaintiffs and defendants should first be fixed.
1. Taking up, in the first place, plaintiffs’' claim: It appears that plaintiffs claim for extra work the sum of $2,600.50, as follows:
Templates for concrete work on floor of building, $960.55; plastering ceiling, $131.60; grading grounds, $244.51; material furnished $263.85 — making a grand total of $8,402.75, *907 the sum first above mentioned. This will be considered later.
2. The plaintiffs claim to have carried on their work until the beginning of March, 1903. At that date they aver it was mutually agreed that Noullet & Oo. take charge of the contract and complete the work.
Plaintiffs have a right to the amount stipulated in the said contract, as before stated, less whatever sum Noullet & Co. are entitled to for completing the work. They are not entitled to extra work, for reasons that we will mention later.
3. Noullet & Co., with whom plaintiffs had entered into a written agreement, completed the work. This agreement is in' the form of letters. They specify work to be done.
Amounts paid plaintiffs by defendants:
The amount paid by defendants on the subcontract, to wit, the sum of $8,268.62, and the sum of $3,121.07 is admitted by plaintiffs, the only difference -between plaintiffs .-and defendants in regard to the amount paid Is $117.95, a difference that we will dispose ■of at this time.
The bookkeeper of the defendants testified in regard to this amount that it was for & bill that had been rendered to plaintiffs for material sold to them. If there is testimony to the contrary we have not found it an the transcript.
This amount should be allowed.
4. Regarding the next item, it appears that (there was a small bill for reconstructing paving -work which had been rejected by the city engineer.
In the letter addressed to Noullet & Co. it iis stated:
“The back porch must be done in accordance with the city engineer’s orders. It is understood that one-half of the item will be borne toy you.”
The defendant did the work referred to in this letter, and in consequence one-half of amount due therefor is due to him.
It was properly allowed heretofore.
The next item amounts to the small sum of $12, which is sustained by the testimony of the bookkeeper.
The next item was for expenses incurred for removing debris, under the orders of the city engineer, left by the plaintiffs at the building where they had been at work.
They had, it seems, been notified to remove this debris. In this they failed, though notified. It was, in consequence, properly removed at their expense.
We take up the next item mentioned as an amount expended in carrying out the instructions of a special committee of the city council.
The amount is $540.70, expended as stated in carrying out the instructions of the special committee of the city council.
The engineer of the city at first accepted this work.
Afterward the council and he agreed that it was not satisfactory work and ordered it to be taken out.
Plaintiffs, it seems, were notified. They failed to make the change demanded. It was done by defendant.
It appears that the charge for the work is not unreasonable. It was not shown that the work had been paid for by any one. It is an amount due, and under the terms of the contract it should be deducted from the amount which plaintiffs would have received had they performed this work satisfactorily to the city authorities.
The contract under which the building was. constructed provides that “in all other respects the work shall be satisfactory to the city «engineer.”
Work done in accordance with request of plaintiffs:
There are two items, one for the sum of $1,720.70, and the other amounting to $1,885.67. These items fall within the terms of the agreement between plaintiffs and defendants, as made evident by the two letters *909 -quoted at the end of our opinion. It does not appear that the surety company paid the •sums charged by Noullet & Co. to plaintiffs, .and by agreement they were to be deducted ‘from the money earned under the subcontract ■•entered into between plaintiffs and defend■ants.
Inferior material:
The next item is for $383.11. It is charged that material of inferior quality was used in the plumbing and heating work; that "it became necessary to take out this material and put in other material in its place. But ■the evidence does not make it clear that this material was furnished by plaintiffs.
In the absence of required certainty, it -.should not be charged.
Material was put in by others, and some •of it furnished by the defendants themselves.
Without positive evidence the item is not •charged to plaintiffs.
The bookkeeper of defendants testified in ■regard to this claim.
The different items do not amount to the -.sum he thought. The difference between his addition and the items as set down by him In his evidence is small. None the less, there is a difference, and we think the material should not be charged, as there is no certainty that it was furnished by plaintiffs.
Again, as inferior as this material may "have been, if it was furnished by plaintiffs, not the least attempt was made to return it •or to account for it.
We leave out this claim, and in that re•spect agree with the learned judge of the •district court.
The boiler and materials furnished:
The first was for removing the boiler, amounting to $9.25. It is sustained by the •evidence.
And the second, amounting to $56.40 for material furnished, is also allowed.
Commission claimed by defendants:
The 15 per cent claimed under this heading is not allowed. The written agreement does not admit of such a claim.
At the time Noullet & Co. undertook to complete the subcontract, one of the plaintiffs, M. C. Sintes, wrote to them, as will be seen by extracts from the' -subjoined letter. It limited the work to be done.
The letter ,of the other plaintiff is very explicit :
“It is agreed that you are not to charge for your services.”
The foregoing is from one of the letters in accordance with which much of the work of defendants was done. They are binding upon them, and they exclude all idea of commission.
As relates to default:
There is a clause in the subcontract that plaintiffs should pay $10 per day for every day’s delay. There is positive testimony upon this subject, from which we will quote freely.
Mr. J. P. Baldwin, of counsel for defendants, testified, and said, among other things, in regard to this delay:
“Q. Do you recollect any expression as to its not being the desire of Noullet & Co. to hold Selby and Sintes on any demurrage?
“A. I think the idea was this: That what I endeavored to state to you was that Noullet & Co. were not actuated by any desire to injure Selby and Sintes; that they had no desire to hold them or to force them to any loss, and the demurrage clause may have been discussed on that basis; that they had no desire to make Selby and Sintes suffer any loss whatever, unless, of course, Noullet & Co. should suffer the same loss.”
Again:
“Q. Was it not put into an expression of so many words that, unless Noullet & Co. should suffer loss by reason of the delays, or any other delays, Selby and Sintes would not be held for the $10 demurrage?
“A. I think that matter was discussed between us; yes, sir. The idea was simply this.
“Q. Just answer my question, ‘yes’ or ‘no.’ Wasn’t that what you told me at the time?
“A. Well as a lawyer, it is pretty hard to answer the question ‘yes’ or ‘no,’ as it has several clauses. I will say ‘yes,’ and then explain.
“The idea was, as between us, that Noullet & Co. did not want to make anything on Selby and Sintes; if Noullet & Co. lost anything by *911 reason of the delay, then they wanted Selby and Sintes to make the loss goon under the demur-rage clause. On the other hand, if Noullet & Oo. did not lose anything, then they did not want to hold Selby and Smtes.”
Mr. Gowland, attorney for plaintiffs, testified, and his testimony agreed with that of Mr. Baldwin.
Now, in the face of that testimony, the judgment will not be disturbed as relates to the item in question.
Business reputation:
The last item for $10,000 in the reeonventional demand, asserting damages to the business reputation of the company, cannot be allowed. The firm is now dissolved. There is no testimony that can be made the basis of a judgment for that large sum on the ground upon which the claim is based.
Extra work:
Plaintiffs claim a large amount under this heading. The testimony is conflicting, and, to say the least, renders the charge exceedingly problematical. Moreover, the agreement between the city of New Orleans and Noullet & Co. was that no claim would be made for extra work unless it was ordered in writing by the city engineer.
It is certainly out of the ordinary that so large an amount should be charged for extra work in view of the contract which contains such a provision. Moreover, the testimony does not sustain the item with sufficient certainty and to the extent required.
Plaintiffs are not in a position to claim that they were ignorant of the terms of this contract.
The judgment appealed from on this branch of the case, in our view, does justice.
The amounts allowed in reconvention will be increased by $658.65 allowed to defendants against plaintiffs Selby and Sintes.
The reeonventional demand allowed amounts to $4,496.32.
5. Mis joinder of. defendants:
The next question for decision comes up on plaintiffs’ objection in argument and the objection of the National Surety Company and of Stafford and Boylan in their exceptions.
They were all virtually parties to this suit
The surety company excepted, and in the alternative took the position that if the exception was overruled Stafford and Boylan, its guarantors, should also be made parties.
The contention at this point is that there is no warrant in the Code of Practice for this kind of proceeding; that plaintiffs were never cited.
The foregoing is the position of plaintiffs in argument on this point.
The surety company urges that, if it should be brought to answer the reeonventional demand set up by Noullet & Co. in their answer to the demand of plaintiffs, because it had become surety for them, it must follow that Stafford and Boylan, its guarantors, are also to be made parties; that, if its exception be overruled, a like exception by the guarantors should also be overruled; that its fate as parties in this suit must be similar to that of its guarantors.
The position of the surety company rendered it necessary to consider particularly the eases of its guarantors, for, if they are-to remain parties to the suit, then the surety company is to remain. If they are dismissed, then it necessarily follows that the cause against the surety company must be dismissed.
They should all remain parties (i. e., the National Surety Company and Stafford and Boylan, guarantors), and an end arrived at in the litigation. The following are our reasons, for holding that they are properly parties:
The city of New Orleans deposited, to be divided among the creditors, the balance due on its contract with Noullet & Co.
All interested parties are before the court.
*913 Plaintiffs briefly .argue that the guarantors should not have been made parties, nor the surety company; but they hare acquiesced and urged no objection on appeal. On the contrary, the surety company asked in their answer to the appeal that the judgment be amended in so far as it (the surety company) is concerned.
It is a general- rule that all parties who have an interest in the matter in question should be joined either as plaintiff or defendant, if the action is founded on a contract either expressed or implied.
Here, in taking the transaction as a whole, all parties have an interest.
From that point of view there can be no great objection to their being parties.
Plaintiffs and defendants are to be paid from the fund.
Plaintiffs and defendants look primarily to the fund which has been deposited, and each and all are interested in the proper distribution.
Plaintiffs by their letters show that it was their intention to pay for the work remaining to be done out of the funds to be collected from the city.
A privity of interest arises among all parties concerned which can be settled in proceedings en concurso.
Having concluded that the exceptions were properly overruled, we take up the claim of the surety company, which presents the only serious question remaining to be solved.
6. One of the stuns claimed by the surety company was expended by it in payment of a work done under a contract, a contract in which they were compelled to enter in order to prevent greater loss. It was necessary to complete the abandoned work. The sum thus paid was $2,600 for completing the heating system and other works within the building. The paving also had not been satisfactorily done.
The testimony shows that the surety company expended the additional sum of $2,-720.55 to complete the paving, making a total of $5,322.55 to which the surety company is entitled out of the fund deposited.
One of plaintiff’s objections is that the surety company and defendant Noullet, or Noullet & Co., took up some of the work that plaintiffs had done; that is, tore it up. This was done by them because under the original contract and the surety company’s bond they were obliged to deliver the building and other construction in a satisfactory condition. Plaintiff having failed to do satisfactory work according to the city, the authorities had the change made. This, under the terms of the agreement, had to be made at the expense of plaintiff.
7. This brings us to a consideration of the claim against Stafford and Boylan, alleged guarantors of the surety company.
The instrument signed by them, like the-work whieh plaintiffs bound themselves to do for defendant, bears on its face the evidence of its incompleteness. It was never signed by the principal.
We infer that there was an intended principal who never bound himself. There cannot be a guarantor in a contract in which it is expressed that both guarantor and principal should be bound if both do not sign in accordance with the condition of the contract.
The contract sets forth that “we are to-be bound,” meaning principal and guarantor.
In the body of the instrument provision is made for the payment of the premiums. This must have been intended as expressive of an obligation of the principal.
If the guarantor also was bound for this-premium, it is manifest that under the terms of the contract both are to stand for this premium, and not the guarantor alone.
*915 There was a principal, and the alleged guarantor did not assume the obligation -of a third person.
The two first items of the judgment of the •district court remain unchanged.
The third item is increased to $4,496.52.
The fourth item is increased to $2,623.24.
The fifth item remains unchanged; also, .'the seventh.
It is therefore ordered, adjudged, and de■creed'that the judgment be amended by increasing the amount claimed by Noullet & Co. by one sum of $117.95, and another sum of -$540.70, making a total of the reconventional demand of Noullet & Co. $4,496.32, instead -of $3,837.67, as heretofore allowed, and de- • creasing the amount in favor of the National Surety Company against the receivers of Noullet & Co. for the balance found to be due 'by Noullet & Co. to George Selby and M. C. •States from, say, $1,964.59, to $1,305.94, with interest from judicial demand. As amended the judgment is affirmed.
Plaintiffs must pay the costs of the re-conventional demand, and defendants the •costs of the main (or plaintiffs’) demand.
On appeal, appellees must pay costs.