(91 South. 139)

No. 24559.

## O'LEARY v. BOARD OF PORT COM'RS FOR PORT OF NEW ORLEANS.

(May 2, 1921. On Rehearing, Jan. 2, 1922.)

*(Syllabus by Editorial Staff.)*

1. Contracts ⬤⟞232(4)—Where written order necessary for extra work in building contract, such order only basis for claim.

In an action for extraordinary expense incurred in doing the work contemplated by a contract for construction of a building, where the contract provided that all extra work should be only on the order of the engineers, in writing, such order and approval should have been in writing, upon which to found plaintiff's claim.

2. Contracts ⬤⟞284(4)—Where contract provided for ruling on extras, failure of contractor to protest ruling of engineers within 10 days construed as acceptance of ruling.

Where a building contract provided that if the contractor considered any work required of him by the engineers to be outside the requirements of the contract, he should ask for a written ruling immediately, and if he considers the ruling unfair file a protest, and the failure to make such protest within 10 days should be construed as an acceptance of such ruling, in an action for extraordinary expense in doing work contemplated by a building contract, where plaintiff did not make any protest to the ruling of the engineers under the terms of the contract, it must be construed that he accepted same.

3. Contracts ⬤⟞232(1)—Contract providing no compensation allowed for unusual difficulties, contractor's experiments in construction not allowable.

Where a building contract provided that "no additional compensation will be allowed if unusual difficulties are encountered," the cost of the contractor's different experiments in the construction of his work cannot be allowed.

4. Contracts ⬤⟞232(1)—Where bidders were warned to examine location of proposed buildings, one accepting cannot complain of existing conditions.

Where in an offer for bidders to a contract for erecting a foundation to a building, the bidders were warned to examine the location of the proposed work and acquaint themselves with existing conditions, plaintiff, having accepted, cannot complain of the character and amount of work to be performed under the contract.

O'Niell, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by J. P. O'Leary, doing business as the Jefferson Construction Company, against the Board of Port Commissioners for the Port of New Orleans. From judgment for plaintiff, defendant appeals. Reversed, and judgment ordered for defendant.

James Wilkinson, of New Orleans, for appellant.

T. S. Walmsley, Legier & Gleason and W. L. Hughes, all of New Orleans, for appellee.

SOMMERVILLE, J. On August 25, 1915, plaintiff entered into a contract with the defendant for the construction of pile foundation for workhouse annex, drier house, boiler and transformer house, and connections for the public grain elevator on the banks of the Mississippi river in the city of New Orleans. The contract was completed and the money stipulated for was paid, together with certain extras which were allowed by the plaintiff and allowed by the defendant. This suit is for $13,054.80 for expenses attending the driving of certain piles, which expense

plaintiff alleges was not in contemplation at the time of making the contract. The board of commissioners answered that it had fully paid plaintiff for all the work mentioned and contemplated in the contract, and that it did not owe for the expenses said to have been incurred by plaintiff in doing a part of the work. That is, in driving a certain group of piles through a dense earth formation under the waters of the Mississippi river, which the parties did not know was in existence.

There was judgment for plaintiff as prayed for, and defendant has appealed.

[1] The contract and specifications are in the transcript in the original; and they contain the law of the parties thereto. The claim of the plaintiff is not for extras on the contract, but for expenses incurred in doing the work contemplated by the contract. There were no extra piles driven, and little or no extra work done.

Plaintiff in his petition alleges that in driving the piling contracted for he struck such a hard stratum in the soil that, according to the ordinary terms and constructions of the contract and usual conditions in engineering, the piles when they encountered said stratum should have been cut off. But, that contrary to such rules, the engineers arbitrarily forced plaintiff to drive said piles to a depth of 40 to 55 feet, the average depth mentioned in the contract, irrespective of the resistance encountered; that he was required to obtain several steel points to penetrate this obstruction; and "that after conference between the engineers and the contractor the engineers ordered the contractor to jet the piles, jetting not being contemplated in the contract or required of the contractor. He agreed to jet this work only after it was understood that he would be compensated therefor."

In the first part of the contract it is provided:

"That for and in consideration of the payments hereinafter stipulated to be made to him by the port commission, the contractor and his surety hereby agree and bind themselves in solido at their own proper cost to furnish all materials, apparatus, falsework, machinery, tools, supplies, transportation and labor necessary and requisite for and to perform, construct, complete and deliver in a substantial and workmanlike manner, to the entire satisfaction of Ford, Bacon, and Davis, engineers of the said port commissioners and hereinafter called the 'engineers,' all of the work embraced and described in the plans and specifications of said port commission for the construction of pile foundation for workhouse annex, drier house, boiler and transformer house and connections, in strict accordance with the said plans and specifications and proposal, which are each and every one of them signed by both of the contracting parties to identify them with this contract and as part thereof, as follows, to wit," etc.

It was further agreed that:

"The work to be done under this contract shall be executed under the immediate direction and supervision of Ford, Bacon & Davis, engineers of the port commission, or their representatives, and the said engineers shall be the judges of, and shall decide all questions or disputes that may arise under this contract with regard to the interpretation of the plans and specifications, quality of material or workmanship or any other dispute or question arising thereunder, and their decision shall be binding upon the parties hereto, except in cases of protest by the contractor, in which event the port commission shall be appealed to and the decision of the said board on the objection or protest of the contractor shall be deemed binding and conclusive on said contractor.

"The engineers acting for the port commission reserve the right to make such alterations or modifications in the said plans or specifications, or both, in accordance with paragraph 39 of said specifications as they may deem advisable, but the contractor shall not proceed with these changes without a written order from the engineers approved by the port commission; this order shall stipulate the work to be done under the changed, modified, or altered conditions, the difference in time allowance and the difference in price, whether in favor of or against the contractor. The contractor shall, under the circumstances, have the right to increase, diminish or alter the work to be done under this contract; nor shall

any claim for extra work be allowed or entertained, either in time allowance or in cost, unless the increase, decrease or extra work shall have been ordered in the same manner as above required for changes, modifications, etc., in the plans and specifications."

Plaintiff did not obtain the order from the engineers, or the approval from the board to incur the expense which he is here claiming. Such order and approval should have been had in writing upon which to found the claim made in this suit. Neither does he allege the refusal of the engineers to give such order, nor any fraud as to his rights, or such gross mistake as could amount to fraud.

In 17 Am. & Eng. Annotated Cases, p. 81, it is said:

"The well-settled rule is that, where a building contract provides that no charge shall be made for extra work unless a written order for the same shall have been given to the contractor by the architect, or by the person standing in the place of the architect, or supervising engineer, no recovery can be had without such a compliance with such provision," with cases cited to that effect.

And in Selby v. City of New Orleans, 119 La. 900, 44 South. 722, it is said:

"Moreover, the agreement between the city of New Orleans and Noullet & Co. was that no claim would be made for extra work unless it was ordered in writing by the city engineer.

"It is certainly out of the ordinary that so large an amount should be charged for extra work in view of the contract which contains such a provision. Moreover, the testimony does not sustain the item with sufficient certainty and to the extent required.

"Plaintiffs are not in a position to claim that they were ignorant of the terms of this contract."

Plaintiffs, having agreed to furnish all materials, apparatus, falsework, machinery, tools, supplies, transportation and labor necessary and requisite to perform, construct, complete and deliver the work mentioned in the contract "at their own proper costs," will be held to a compliance therewith.

And, in another provision of the contract, the contractor had to make all necessary arrangements for the use of any and all designs, methods, processes, apparatus, or materials shown or required in the plans and specifications and contract, and shall make all payments required as license, royalty, etc., on such account. When therefore it became necessary in the opinion of plaintiff to obtain steel points, I-beam and wash drills to drive the piles to the depths mentioned in the contract, it became his duty, at his expense, to supply them.

The piles were to be placed plumb accurately in the location by plaintiff and by means to be approved by the engineers. But it is not shown that the engineers directed plaintiff to secure these steel points, wash drills and I-beam, and when plaintiff wrote to the engineers about the obstruction he had met with in penetrating the piles to the required depth they wrote him:

"We note your comment on the cost of the points and I-beam, but do not agree with you that the cost should be paid for as an extra. Our suggestion of the use of the points was only a suggestion, as this seems to us the easiest way of penetrating timber, etc., but the use of an I-beam was suggested by you as being less expensive than the points. Our only purpose is to secure the placing of the piles as covered in the contract; any special means to secure this object being only suggested by us, you being entirely at liberty to place them according to methods that seem to you most desirable."

And plaintiff continued to use the steel points throughout the balance of the work at his own expense.

[2] And, as we have seen, the decision of the engineers was "binding on the parties thereto." It was written in paragraph 7 of the specifications:

"If the contractor considers any work required of him by the engineers, or their representatives, to be outside of the requirements of the contract or considers any record or ruling unfair, he shall ask for a written record or ruling immediately, and shall file a written protest with the Port Commission against the same.

150 LOUISIANA REPORTS

The failure to make such protest within ten days shall be construed an acceptance of such record or ruling."

Plaintiff did not make any protest to the ruling of the engineers, and under the terms of the contract it must be construed that he accepted same. He was silent on the subject during the following two months, and in the meantime accepted the engineers' certificate of his work, and he received payments giving full receipts therefor. He applied to the engineers for a reconsideration of the matter which was disallowed. The engineers answered:

"As regards additional payment on account of the difficulties encountered, we are of the opinion that the specifications were definite in requiring that the work be completed, even though such conditions were encountered, and that, under the contract, the contractor is not entitled to any additional compensation."

On March 24, 1916, plaintiff obtained the certificate from the engineers for extra work on the contract amounting to $1,603.54; but no mention was made of the steel points, I-beam, labor or jetting piles. And on April 7, 1916, he accepted from the engineers a full and final estimate for the completion of the contract without further protest or appeal.

Plaintiff contends that by a letter written by the engineers dated September 13, 1915, it was agreed that he had the right to cut off the piling when they had driven 20 or possibly 25 feet. But the letter can bear no such construction. It reads in part:

"Should it be found impossible to drive piles of the length ordered such piles will be cut off and compensation allowed the contractor for the difference in price between the piles ordered and the piles actually used on the basis of purchase price of piling."

But it was not impossible in this case to drive the piles to the required depth, and they were so driven. It is the expense for driving them to the required depth which plaintiff is claiming. In his bid of September 15, 1915, he agreed to drive the piles to a depth of 40 to 70 feet, which was after the letter of September 13, 1915, was written and received.

[3] The cost of the different experiments by the plaintiff in the construction of his work cannot be allowed under another provision of the contract, which reads:

"No additional compensation will be allowed if unusual difficulties are encountered in the execution of any part of this work."

"But it is the rule that where a party desires to be excused from performance in the event of contingencies arising, it is his duty to contract for this. Hence performance is not excused by subsequent inability to perform by unforeseen difficulties, by unusual or unexpected expense, by danger, by inevitable accident, by the breaking of machinery, by strikes, by sickness, by weather conditions, by financial stringency, or by stagnation in business. Nor is the performance excused by the fact that the contract turns out to be hard and unprovident, or even foolish, or less profitable, or unexpectedly burdensome." 13 C. J. p. 636.

And in Spearin v. United States, 248 U. S. 132, 136, 39 Sup. Ct. 59, 61 (63 L. Ed. 166), the court said:

"The general rules of law applicable to these facts are well settled.

"Where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation, because unforeseen difficulties are encountered. * * *

"Thus one who undertakes to erect a structure upon a particular site assumes ordinarily the risk of subsidence of the soil."

And in Day v. United States, 245 U. S. 159, 38 Sup. Ct. 57, 62 L. Ed. 219, the court said:

"One who makes a contract never can be absolutely certain that he will be able to perform it when the time comes, and the very essence of it is that he takes the risk within the limit of his undertaking. * * * When the scope of the undertaking is fixed, that is merely another way of saying that the contractor takes the risk of the obstacles to that extent."

Plaintiff with the other bidders was warned in the specifications which he bid on and signed to—

"examine the location of the proposed work and acquaint themselves with existing conditions, as well as with drawings, in order that no misunderstanding may afterward arise as to the character or amount of work to be done.

"No additional compensation will be allowed if unusual difficulties are encountered in the execution of any part of the work."

[4] And had plaintiff visited the location and tested it before making his bid he would have learned of the existence of the hard earth formation which he subsequently found, and there would have been no misunderstanding afterwards as to the character of or amount of work to be done.

The judgment appealed from is annulled, avoided, and reversed; and it is now ordered that there be judgment in favor of defendant, rejecting plaintiff's demands at his cost.

O'NIELL, J., concurs in the result because of the clause in the contract denying plaintiff's right to additional compensation for encountering unusual difficulties.

### On Rehearing.

PROVOSTY, J. For the reasons assigned in the original opinion herein, from which a rehearing was granted, the judgment heretofore handed down herein is reinstated, and made the judgment of this court.

O'NIELL, J., dissents.