No. 3062

Second Circuit

———

AULT & BURDEN v. SHEPHERD ET AL.

———

(March 14, 1928. Opinion and Decree.)
(May 22, 1928. Rehearing Refused.)

———

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Builders and Buildings—Par. 5, 7.**

A supplemental agreement made between a bonding company, the contractor and the sub-contractor whereby the contractor agrees ·to make necessary advances through the bonding company to pay all bills for materials and supplies used by the sub-contractor when interpreted together with the balance of the agreement whereby all the obligations of the bonding company remain in full force and effect, must make the bonding company liable for all advances made by the contractor to the sub-contractor whether for material, labor or cash for pay-rolls.

2. **Louisiana Digest—Builders and Buildings—Par. 5, 18.**

A stipulation in a building contract that no claims for extras shall be valid unless made in writing is valid and binding upon the parties, and when the contract so provides, and where there is no written demand for such extras, no recovery can be had in the absence of a waiver of that stipulation or can parol evidence be introduced to prove the extras.

Appeal from the First Judicial District Court, Parish of Caddo. Hon. J. H. Stephens, Judge.

Action by Ault and Burden against J. C. Shepherd et al.

There was judgment for plaintiffs and defendants, appealed.

Judgment amended and affirmed.

Thigpen, Herold, Lee and Cousin, of Shreveport, attorneys for plaintiffs, appellees.

Wise, Randolph, Rendall and Freyer, of Shreveport, attorneys for defendants, appellants.

ODOM, J. On May 28, 1923, the plaintiffs, Ault & Burden, entered into a contract to build the Washington Hotel in the City of Shreveport.

On January 25, 1924, said Ault & Burden entered into a contract with the defendants, J. C. Shepherd & Company, to do the lathing and plastering work for said structure at a stipulated price.

Shepherd & Company furnished bond in the sum of $40,000.00 to secure the performance of the contract.

During the progress of the work, Shepherd & Company became financially embarrassed and were about to default on their contract, whereupon a separate or supplemental written agreement was entered into between Ault & Burden, the general contractors, and Shepherd & Company, the sub-contractors, with the concurrence of Shepherd & Company's bondsman to the effect that Ault & Burden were to advance to Shepherd & Company all such sums of money as might be necessary to take care of Shepherd & Company's pay-rolls until the work under the sub-contract was completed and to charge all such sums to the sub-contractor, and if the sums so advanced exceeded the amount due the sub-contractors under the contract, such excess payments should be refunded to Ault & Burden by the sub-contractors or by their bondsman.

Ault & Burden bring this suit against Shepherd & Company and the Standard Accident & Insurance Company, Shepherd & Company's bondsman, for $1,915.71, which they allege, they advanced to Shepherd & Company in excess of the amount due under the contract.

Plaintiffs also alleged that the subcontractors, Shepherd & Company, had caused to be inscribed in the mortgage records of Caddo Parish a statement showing that plaintiffs are indebted to them in the sum of $6,165.47 coupled with an affidavit claiming a lien on the Washington Hotel for said amount, which statement and affidavit are alleged to be untrue, and they asked that said inscription be cancelled and erased from the records.

Defendants, in answer, denied any indebtedness to plaintiffs and alleged that plaintiffs are indebted unto them in the sum of $6,165.47

"for extras done at the special instance and request of said Ault & Burden, as shown by statement hereto attached and made part hereof."

There was judgment in the lower court in favor of plaintiffs for the full amount sued for, ordering the cancellation of the inscription of the lien filed by defendants, and rejecting defendants' reconventional demand.

Defendants appealed.

### OPINION

There is but little controversy over plaintiff's claim against defendants for $1,915.71 for advances made in excess of the contract price for the work.

Attached to plaintiffs' petition is an itemized statement dated January 1, 1925, addressed to J. C. Shepherd & Company for "materials and labor furnished your

men, Washington Hotel job," the items thereon totaling $650.28. All other excess charges are for money advanced and they are not disputed. But defendants contend that they should not be required to reimburse the $650.28 shown on this separate statement.

As a witness in his own behalf, Mr. Shepherd did not dispute any of the items on this separate satement, except one for $29.00 for "setting screeds" and those for "hoist." He testified that he knew nothing of the item for $29.00, and we note that when Mr. Copeman, plaintiffs' foreman, was questioned about this item he was unable to explain it. There is no proof of that item, and it must be rejected.

The charges for "hoist" and current to operate the same amount to $324.00. These charges defendants say they should not be required to pay.

The contract between plaintiffs and defendants provides that the—

"contractors (Ault & Burden) is to furnish the subcontractors (Shepherd & Company) with one of the elevator shafts for use in installing sub-contractors' hoist for use in hoisting his materials."

At the time defendants began work, there was installed in the elevator shaft which they desired to use, an electric hoist belonging to plaintiffs. Mr. Copeman, plaintiffs' foreman, testified that at that time defendants did not have a hoist available for installation in the shaft and as the hoist was necessary for defendants to carry on their work, it was agreed that defendants should use plaintiffs' hoist until defendants' could be installed in the shaft.

Mr. Copeman testified, and his testimony is not disputed, that defendants did use plaintiffs' hoist from about March 9th to the latter part of July. Plaintiffs made no charge for the use of the hoist but did

charge to defendants the bills which they paid for the electricity used in operating it, and also charged amounts paid the engineer for overtime in operating the hoist. It seems that defendants used the hoist after five o'clock.

Mr. Copeman says that Shepherd agreed to pay these charges, but Shepherd denies that. Copeman says that during the five months in which the hoist was being used, he rendered to Shepherd weekly statements showing these charges, and that Shepherd made no objection to them.

Plaintiffs were under no obligation to furnish defendants a hoist or to pay the expense of operating it, and there is no testimony that Mr. Copeman or any one else agreed to pay the expense of operating it without charge.

Shepherd knew that it took electricity to operate the hoist, for which some one had to pay, and he knew the engineer had to be paid for his overtime work. He accepted and used the hoist, thereby agreeing, tacitly at least, to pay the expense, and this fact, coupled with Copeman's testimony that Shepherd agreed to pay the bills and that regular statements of the charges were rendered to him and that he made no objection thereto, we think sufficiently prove the charges.

Our conclusion, therefore, is, that plaintffs' claim, except the item of $29.00 for "setting screeds" is made out.

The Standard Accident and Insurance Company, defendants' surety on the bond, denes liability for the charges against defedants for "materials and labor furnishd" amounting to $650.28.

The original bond and contract of suretyship is dated January 29, 1924, is in favor of Ault & Burden, and is conditioned upon the faithful performance of the contract by the sub-contractors.

Thereafter, on July 1, 1924, a supplemental written contract was entered into between Ault & Burden, on the one side, and the sub-contractors and the bonding company, on the other, in which it is recited, among other things, that said Shepherd, the sub-contractor, had defaulted on his contract and that—

"the same can be declared terminated by the contractor, and the said Shepherd, furthermore, is in need of advances of cash in order to enable him to comply with his contract if such forfeiture be not declared."

Then follows a stipulation that if Shepherd will continue to devote his time to the completion of the work, employing plasterers at the usual wage scale, Ault & Burden

"agree not to declare a forfeiture of the said subcontract, but to permit the said Shepherd to continue to perform the same, advancing to the said subcontractor the weekly pay-roll accruing to the workmen and laborers employed by the said Shepherd in the work of lathing and plastering on the said Washington Hotel."

"In like manner Ault & Burden agree to make necessary advances through the said Bonding Company to pay all *bills for materials and supplies used by the said Shepherd* on the said Washington Hotel under such subcontract." (Italics ours.)

Section V of this agreement reads as follows:

"It is agreed and understood that except as herein provided, the contract of date January 25, 1924, between the parties hereto, including the obligations of the said Bonding Company, shall remain in full force and effect, and that nothing herein shall in any manner affect the liability of the Bonding Company under its bond, or be considered as in any manner impairing or waiving or increasing any of such liability; the said Bonding Company

obligating itself hereby to hold the said Ault & Burden harmless against liability hereunder for any sums in excess of the amounts payable to the said Shepherd under the terms of his contract, and obligating itself promptly to refund to the said Ault & Burden any and all amounts paid under this contract which, together with sums already paid, may exceed the amount due to the said Shepherd under his said contract with Ault & Burden, and provided that the liability of said bonding company shall in no case exceed the amount of its said bond."

The bonding company contends that its obligation under the supplemental agreement was only to reimburse to Ault & Burden such sums as they had paid in cash to meet Shepherd's pay-rolls, and in support of that contention there is cited the clause which reads:

"and obligating itself promptly to refund to the said Ault & Burden any and all amounts paid under this contract which, together with sums already paid, may exceed the amount due to the said Shepherd under his contract with Ault & Burden."

Counsel contend that the last above quoted clause limits the liability of the bonding company to the repayment of only such sums as were paid in cash by Ault & Burden and excludes all other advances.

We must, if possible, ascertain the intent of the parties to the contract, and, to do that, the contract must be construed as a whole.

The supplemental agreement evidenced by the written document in the record, was made solely in the interest of Shepherd and his bondsman. At the time it was made, Shepherd had defaulted and Ault & Burden could have terminated the contract and called upon the bonding company, under the bond, "for loss or damage directly caused by the failure of the principal (Shepherd) to faithfully perform said contract." Shepherd, having exhausted his financial resources, could go no further without assistance. The bonding company stood back of Shepherd, and it was to its interest that some arrangement be made whereby he could go forward under the agreement of July 1st to which the bonding company was a party. Ault & Burden agreed that they would not terminate the contract, provided Shepherd would devote his time to the work, and further agreed to assist him in carrying out his contract, by making the necessary advances "to pay all bills for material and supplies used by said Shepherd on the said Washington Hotel under such subcontract." This is what the bonding company would have had to do under its contract of suretyship had Shepherd's contract been abrogated by Ault & Burden.

The purpose of the supplemental agreement, in so far as the bonding company was concerned, was not to alter or lessen its obligation under the bond, but to recognize and continue that obligation in full force and effect.

The agreement of July 1st specifically provided that—

"except as herein provided, the contract of date January 25, 1924, between the parties hereto, *including the obligations of the said bonding company*, shall remain in full force and effect, and that nothing herein shall in any manner affect the liability of the bonding company under its said bond or be considered as in any manner impairing or waiving or increasing any of such liability."

The quoted phrase, "except as herein provided" unquestionably related to that part of the contract which was not contemplated or provided for in the original contract and bond.

It was clearly intended, we thin, by all parties, that the bonding company should reimburse Ault & Burden or all

advances made to Shepherd to enable him to carry out his contract, whether such advances consisted of material, labor or cash for the pay-rolls.

However, if counsel's interpretation of the contract be accepted, that is, that the bonding company was obligated to reimburse only such sums as were advanced in cash, we do not think it relieved, because the items charged on the separate account totaling $650.28, which are contested, are, with but few minor exceptions, for cash advanced and not for materials. We find on the account a charge of $7.00 for a keg of nails and $1.65 for three window lights for ball room. With these exceptions, the items were for money advanced for such as ice, building trestles and scaffolding, cleaning bath rooms, cleaning trash out of dining room, hauling trash and cleaning up, power and labor for operating hoist, bill paid to Otis Elevator Company for junction box, and express on same, etc.

These payments were necessary to complete Shepherd's contract, and the bonding company obligated itself to refund "all amounts paid under this contract."

Now, as to defendants' reconventional demand.

He reconvened for $6,165.47 "for extras done at the special instance and request of said Ault & Burden."

In the contract between plaintiffs and defendant, the subcontractor agreed, in paragraph (c) under Section 5,

"To make all claims for extras, for extensions of time and for damages for delays or otherwise, to the Contractor in the manner provided in the General Conditions for like claims by the Contractor upon the Owner, except that the time for making claims for extra work is one week."

The contract between the owner and the general contractor provides, in Article 25:

"If the Contractor claims that any instructions, by drawings or otherwise, involve extra cost under this contract, he shall give the Architect written notice thereof before proceeding to execute the work and, in any event, within two weeks of receiving such instructions, and the procedure shall then be as provided in Art. 24. *No such claim shall be valid unless so made.*"

Defendants, plaintiffs in reconvention, did not allege nor do they claim that they made demand in writing upon the general contractor for the extras for which they claim compensation. Nor do they allege or attempt to prove that the special provisions in the contract to the effect that no claim for extras shall be allowed unless made in writing had been waived or abrogated by the parties.

When counsel for defendants, plaintiffs in reconvention, sought to make parol proof of their demand in reconvention, they were met with the objection that such proof was not admissible under the pleadings and the contract, which objection was sustained by the lower court. We think that ruling was correct.

It is well settled that a stipulation in a building contract that no claims for extras shall be allowed unless made in writing is valid and binding upon the parties, and that when the contract so provides, and there is no written order for such extras, no recovery can be had in the absence of a waiver of that stipulation.

O'Keefe vs. St. Francis Church, 59 Conn. 551, 22 Atl. 325; Merchants Exchange vs. Butler, 3 Texas App. 375; Copeland vs. Hewett, 96 Me. 525, 53 Atl. 36; Ahern vs. Boyce, 19 Mo. App. 552; Sheye vs. Pinkerton Const. Co., 59 Atl. 462; Traitie Marble

Co. vs. Brown Bros., 144 N. Y. Supp. 562; Corson vs. Ziehl, 103 Wis. 381, 79 N. W. 562; Chicago Lumber & Coal Co. vs. Garner, 132 Ia. 282, 109 N. W. 780.

In the latter case, the Court said:

"The manifest object of such a provision was to cut off all possibility of controversy between the parties by fixing the increased compensation of the contractor in advance and to protect the owner against doubtful claims."

Bauman vs. Jackson, 121 Tenn. 381, 117 S. W. 504, 17 Ann. Cas. 77.

In the case of James Reilly Repair & Supply Co. vs. Smith, 177 Federal 168, where the contract contained a provision with reference to extras similar to that in the contract in the case at bar, the Court said:

"The explicit terms of the written agreement should not be disregarded, except upon proof so clear and convincing as to leave no doubt as to the intention of the parties to waive them and substitute an oral agreement therefor."

In 6 Cyc. page 77, we find the rule stated as follows:

"Where the contract contains conditions in reference to compensation for extras, the builder must comply with them or he has no right to compensation, unless the provisions be waived by the owner. Thus, where the specifications provide that no extra work shall be allowed except on written order from the architect, such order must be obtained, a verbal order not being sufficient unless known to the owner or the charge for extra work is agreed to by the owner."

And in 9 Corpus Juris, 880:

"But evidence as to extra work is not admissible in the absence of proof of the compliance with the conditions precedent to recover therefor or a waiver thereof."

Under the precise provisions of the contract between the parties in this case "no such claim (for extras) shall be valid unless so made" (in writing).

It is not alleged nor was it proved that said stipulation in the contract was waived.

The lower court sustained the general objection that under the contract no compensation could be allowed for extras unless ordered in writing, but subsequently it permitted parol testimony, pro and con, with reference to the alleged extras, subject to the objection.

Shepherd testified that he had done extra work upon the verbal order of Mr. Copeman, engineer for Ault & Burden. Copeman and all others connected with the transaction, emphatically deny that even a verbal order had been given for extras, and further testified that, except in one instance, no extra work had been done by Shepherd, and in that case an allowance had been made.

Shepherd testified that he was ordered, verbally, to build plaster beams in the main dining room, when the specifications called for beams made of wood, and he charged $2,665.50 for this extra work.

The original plans called for wood beams in the dining room. These plans were changed by agreement between the owner and the general contractor, so as to substitute plaster beams instead and the plaster beams were put in by Shepherd.

But the testimony shows beyond question that this change was made before the sub-contractor took the work and that he knew when he took it that the beams were to be of plaster. His contract especially mentions "plaster beams in ceiling of dining room."

Shepherd, therefore, failed to prove that some of the items for which he claims extra compensation were in fact extras,

and failed to prove that the provisions of the written contract with reference to extras were waived.

In the case of Monarch & Kaiser vs. Board of Commissioners, etc., 49 La. Ann. 991, 22 So. 259, the Court held, to quote the first paragraph of the syllabus:

"Where a builder has contract for a stipulated price to build, as required by an agreed plan and specifications, and it is expressly agreed that no charge would be made for extra work unless it was executed under written authority, charges for extra work will not be allowed, it not having been shown that the proprietor agreed to the change."

And in the body of the opinion, the Court said:

"We also eliminated all questions in regard to extra work not covered by the written agreement, for the reason that to allow for extra work not endorsed on the contract by the officer selected by defendant, would be contrary to the conditions of the contract from which we again quote: 'No charge to be made for extra work unless previously covered by a written instrument.'"

In the case of O'Leary vs. Board of Port Commissioners, etc., 150 La. 649, 91 South. 139, the Court quoted approvingly the following from 17 Am. & Eng. Anno. Cases, page 81:

"The well settled rule is that where a building contract provides that no charge shall be made for extra work unless a written order for the same shall have been given to the contractor by the architect, or by the person standing in the place of the architect or supervising engineer, no recovery can be had without such compliance with such provision."

See, also, Selby vs. City of New Orleans, 119 La. 990, 44 South. 722.

For the reasons assigned, the judgment appealed from is amended so as to reduce the amount thereof for plaintiff from $1,915.71 to $1,886.71. It is otherwise affirmed. Appellee to pay costs of appeal.