LAND, Justice.
 

 On October 25, 1927, the Oscar M. Gwin Construction Company entered into a contract with plaintiffs for the erection of the Jung Hotel Annex on La Salle street, be- ' tween Canal and Cleveland streets, in the city of New Orleans, in accordance with certain plans and specifications. This contract was signed by the Maryland Casualty Company of Baltimore as surety.
 

 In the course of making the excavations, the contractor encountered certain difficulties which he claimed necessitated extra work, and for which he made demand for extra compensation, which plaintiffs refused to recognize.
 

 On April 16, 1928, plaintiffs and defendant entered into an agreement, in an endeavor to adjust the differences between them by arbitration.
 

 In accordance with this agreement, three arbitrators were named, and the dispute was heard by them. Two of the arbitrators rendered an award in favor of defendant, under date of August 29, 1928; the third arbitrator dissenting from the award.
 

 On September 10, 1928, plaintiffs appealed to the civil district court for the parish of Orleans from the award of the arbitrators, and prayed for its reversal.
 

 Article 23 of the building contract reads as follows: “If the work should be stopped under an order of Court, or other public authority, for a period of three months, through no act or fault of the Contractor or of anyone employed by him, or if the Architect should fail to issue any certificate for payment within seven days of its maturity and presentation, any sum certified by the Architect or awarded by arbitrators, then the contractor may, upon seven days’ written notice to the owner and the Architect, stop work or terminate this contract and recover from the owner payment for all work executed and any loss sustained upon any plant or material and reasonable profit and damages.”
 

 Defendant contended that, under the provisions of this article, he had the right to cease building operations and discontinue the work, and, by letter of his attorney, dated September 12, 1928, addressed to the attorney of plaintiffs, gave notice that, unless payment was made, he would, within seven days, cease all operations.
 

 
 *965
 
 On September 13, 1928, attorney for plaintiffs sent to attorney for defendant a check in the snm of $14,616.60 under protest and without prejudice to any of plaintiffs’ rights, or to the suit which they had filed appealing from the award of the arbitrators; plaintiffs contending that defendant well knew at the time that the building was about 90 per cent, complete, and that cessation of operations would necessarily entail extreme hardship, undue litigation, and a tremendous loss to either plaintiffs or defendant, or both, in the event defendant carried out his threat to stop work.
 

 On September 14, 1928, attorney for defendant acknowledged receipt of the check for $14,616.60, and accepted the payment made by plaintiffs under protest, and with full reservation of plaintiffs’ rights.
 

 On January 16, 1931, judgment was rendered in the civil district court for the parish of Orleans, reversing the award of the arbitrators, and, after applying for a new trial, defendant appealed from this judgment to the Supreme Court. On January 4, 1932, the judgment of the lower court was affirmed by this court, and rehearing was refused, February 1, 1932. 174 La. 111, 139 So. 774.
 

 At the time of the arbitration agreement, there was an additional claim by defendant of $1,842.98, which was treated as an addendum and part of the award of the arbitrators. On January 30, 1929, plaintiffs paid this claim to defendant, with the agreement that this amount was to follow the result of the litigation between the parties, in connection with the setting aside of the award of the arbitrators.
 

 Inasmuch as the Supreme Court affirmed the judgment of the civil district court, setting aside the award of the arbitrators; plaintiffs seek in the present suit to recover from defendant and his surety in solido the repayment of the sum of $14,616.60, paid to defendant on September 13, 1928, as well as the sum of $1,S42.98, paid to defendant on January 30, 1929, with legal interest on both amounts from the respective dates of payment, and all costs of the arbitration, and all court costs.
 

 Plaintiffs also seek to obtain, judgment against defendant in the additional sum of 5 per cent, attorney’s fees, on an averment that the building contract entered into by the parties provides that such fees should be paid, in the event that it should become necessary to place this claim in the hands of an attorney at law.
 

 Judgment was rendered in the civil district court in favor of plaintiffs, for the sum of $14,616.60, with legal interest from judicial demand, and for the sum of $1,842.98 with legal interest from judicial demand, and plaintiffs’ demand for attorney’s fees was rejected. From this judgment defendant has appealed.
 

 Peter Jung,' Sr., one of the plaintiffs, Having died in the city of New Orleans on January 18, 1933, his succession was made party plaintiff to this suit through Peter Jung, Jr., administrator of the succession of decedent.
 

 Plaintiffs have answered the appeal, and pray for damages for frivolous appeal,- for interest'on the amounts paid-to -defendant from date of each payment, and' for 5. per
 
 *967
 
 cent, additional as attorney’s fees, on the ground that such fees are provided in the building contract entered into between the parties.
 

 The exception of no right or cause of action, urged by the Maryland Casualty Company of Baltimore, surety of defendant, was maintained .in the lower court, and plaintiffs’ suit as to the surety was dismissed. We find no complaint in the brief of the plaintiffs as to the action of the lower court in this respect.
 

 In defendant’s supplemental brief, filed February 10, 1933, it is said: “We can answer the plaintiff’s attorney in a few words. The plaintiff’s attorney is asking your Honbrs to:
 

 “(lj Ignore articles 2301 and 2302 of the Civil Code, and
 

 “(2) Repudiate your Honors’ decision in Peter Jung et al. v. O. M. Gwin, 174 La. 111, 139 So. 774, and
 

 “(3) Stultify yourselves.
 

 ...“This is all we have to say.” Defendant’s .Sup. Brief, page 1.
 

 The articles of the Civil Code relied upon by defendant read as follows:
 

 Article 2301: “He who receives what is not due to him, whether he receives it through, error or knowingly, obliges himself to restore it to him from whom he has unduly received it.”
 

 Article 2302: “He who has paid through .mistake, believing himself a debtor, may reclaim what he has paid.”
 

 In Jung et al. v. Gwin, 174 La. 117, 139 So. 774, 776, it is said: “If plaintiffs can recover at all, they can only do so as having paid by mistake, or through coercion, something they did not owe. Rev. Civ. Code, art. 2302.”
 

 AVe held that plaintiffs could not recover, under article 2302 of the Civil Code, for the reason that, “if they paid what they did not owe, it was not through any mistake in believing themselves debtors, but from some other cause; that is, through coercion.” Page 118 of 174 La., 139 So. 774, 777.
 

 In the syllabi of the Jung Case it is stated that: “Owners’ payment of arbitration award on contractor’s threat to cease work or terminate contract and sue for damages held recoverable on ground of coercion.”
 

 Although the opinion in the Jung Case does not so hold in ipsissimis verbis, such holding is fairly- deducible from the following statements contained in the opinion in that case (Jung et al. v. Gwin, 174 La. pages 118, 119, 120, 121, 122 and 123, 139 So. 774, 777):
 

 “Now the only claim of coercion plaintiffs make here is that they paid because of the threat of the contractor to stop work, and because, not wishing to have this threat carried out, they deemed it best in order to avoid a heavy loss to some one, either the contractor or themselves, paid the amount under protest, with reservation of all their rights.
 

 “But argues the contractor, under the terms of the contract, he had the right to stop work if the award were not paid in seven days after demand for payment and notice of intention to stop work.
 

 “Hence, it is argued, the contractor threatened to do only that which he had a right
 
 *969
 
 to do, and that the case falls squarely within the terms of article 1856, Rev. Oiv. Code, defining what constitutes want of consent arising from violence or threats; which article reads as follows:
 

 “ ‘If the violence used be only a legal constraint, or the threats only of doing that which the party using them had a right to do, they shall not invalidate the contract. A just and legal imprisonment, or threats of any measure authorized by law and by the circumstances of the case, are of this description.’
 

 “And it is argued that here the contractor was expressly authorized by the contract to do exactly what he threatened to do, and that this court has repeatedly held that one who, without error or duress, has paid an excessive demand cannot maintain an action for repetition thereof, even' though payment was made under protest. Rivers v. N. O. Water Works Co., 35 La. Ann. 822; Carey v. Commonwealth B. & L. Ass’n, 145 La. 1, 81 50. 734; New Orleans & N. E. R. Co. v. Louisiana Const. & Imp. Co., 109 La. 13, 33 So. 51, 94 Am. St. Rep. 395, and authorities there cited.
 

 “But since the contract provided clearly that the arbitration should be had according to the laws of this state (i. e., under the provisions of the Civil Code) which then allowed an appeal to the courts from the decision of arbitration, the clause in the contract, requiring the owner to pay any sum awarded by the arbitrator^ within 7 days of its maturity and presentation, clearly contemplates either that said award should be final and not subject to appeal, or that the award should become final only by abandonment of the appeal or affirmance thereof on appeal. Eor it is clear that the award could not mature until it became exigible, and could not become exigible until it became final; and an award by arbitrators, partaking of the nature of a judgment, cannot, if appealable, be executory or exigible.
 

 “But an award of arbitrators, not clothed' with the powers of ‘amicable compounders,’ cannot be made final and not subject to appeal by convention of the parties to the submission. Rev. Civ. Code, art. 3130; Code Prac. art. 460.
 

 “Hence it follows that the award herein could not 'become final and exigible or executory until after an appeal to the courts had been abandoned or had resulted in an affirmance of the award; unless it be found that these arbitrators were clothed with the powers of amicable compounders.
 

 “But they are not called, eo nomine, amicable compounders in the contract, and nothing on the subject of arbitration in that contract (which we have quoted in full in the beginning of this opinion) indicates that the arbitrators were to proceed otherwise than in strict accordance with the law (see article 3110, Rev. Civ. Code); on the contrary, the very reverse of this appears to be the case, as a mere reading of the clause an [of J arbitration (quoted above'in full) will show.
 

 “It behooves us therefore to look into the award of the arbitrators. But all .the objections urged by the plaintiffs against the form of the proceedings had by the arbitrators appear to us as being unfounded or having been waived; and accordingly we will cbnsider only the merits of their award.
 

 
 *971
 
 ' “The flow of quicksand, cause of the damages and delay which were the subject of controversy between the parties, was duo to tlie 'single fact that the sheet piling, driven to' provide lateral support for the soil adjacent to the excavation that was being made for the foundations, was not. of sufficient length for the purpose; and the question is, Whose was the fault, if any; and, if there was no fault, then whose was the risk?
 

 “We see no fault on either side. Both the contractor and the architects are acknowledgedly men of skill and experience in their respective callings, and neither of them expected, or had reason to expect, the unusual soil conditions which afterwards developed. Had the architects expected, or even suspected, such condition, they would undoubtedly have provided, in order to insure the safety of the work under their supervision, for a greater minimum length for the aforesaid sheet piling. And, by the same token, had the contractor expected or suspected such condition, he would not have failed to use sheet piling somewhat longer than the minimum which the contract and specifications required him to use.
 

 “We think, and the event shows, that this unusual condition of the soil was an unexpected and unforeseen occurrence, though not a' fortuitous event within the meaning of the Code (Rev. Civ. Code, art. 3556, subds. 14, 15, and article 1933, subd. 2).
 

 “It is the general rule that the risk of all such unforeseen, though preventable, occurrences fall on the contractor, unless the contrary bé clearly agreed upon. O’Leary v. Board of Port Commissioners, 150 La. 649, 91 So. 139; Picard Construction Co. v. Board of Commissioners, 161 La. 1002, 109 So. 816, and authorities there cited.
 

 “And in this contract it was not so agreed. On the contrary, the contract very definitely provides, especially in the matter of sheet piling, that the contractor shall beware such conditions. Thus the contract provides: ‘The General Contractor shall, throughout this entire operation and more especially during the progress of pile driving work and excavating, use extreme care and shall employ every usual and
 
 necessary
 
 precaution to protect adjoining hotel and other proximate buildings from damage, and the occupants thereof from annoyance.’ (Italics ours.) And again: ‘Piling subcontractor shall furnish and drive sheet-piling of sufficient cross sectional dimension and length to afford the resistance necessary to protect all excavations for piers, trenches, tanks, and cellars and elevator-pits, assuming full responsibility for the accomplishment of this. He shall provide such other sheet-piling as may be necessary to insure the safety and integrity of adjoining structures and to prevent injury to city curbs and streets, sewers, drains, and other sub-soil facilities set forth above under caption: “Conditions at Sight,” and shall assume full responsibility for the size and sufficiency of the same to the end employed. He shall cut off sheet-piling when, and to such depths as may be directed by the Architects.’
 

 “And the fact that the specifications provided that ‘all sheet piling shall be driven to a point not less than ten feet below levels of adjoining maximum excavations,’ evidences, not that the contractor was not required to drive the sheet piling more than
 
 *973
 
 ten feet below the deepest excavation, even though it proved necessary to go deeper, but that he was required to go at least ten feet below the level of adjoining maximum excavations, whether necessary or not.
 

 “The trial judge rendered judgment in favor of plaintiffs and against the defendant ‘reversing, setting aside, annulling and vacating’ the award of the arbitrators; and the judgment appears to us correct.
 

 “For the reasons assigned, the judgment appealed from is affirmed.”
 

 A correct analysis of the opinion in the Jung Case shows that, under the contract between the parties, the defendant, as contractor, assumed full responsibility during the progress of the pile driving work and excavating of the foundation, and that the risk as to all damages and delays rested entirely upon his shoulders.
 

 The opinion further shows that defendant, as contractor, had no right to demand from plaintiffs under the contract any extra compensation for extra work done as to the foundation.
 

 Under this state of facts, it is manifest that the contractor’s threats to cease operations, if the award of the arbitrators was not paid within seven days after demand for payment and notice of intention to stop work, were not “the threats only of doing that which the party using them had a right to do,” but were, rather, threats to violate the obligations arising from the contract, and thereby entail upon plaintiffs a tremendous loss.
 

 Besides, the award of the arbitrators was not final at the time the demand on plaintiffs for payment was made by the contractor, and for this reason also he had no right to compel payment of the award by plaintiffs.
 

 The opinion holds, therefore, that plaintiffs have a right to recover the sums paid by them to defendant on the ground of coercion, and this is necessarily the law of the case, as the judgment in the Jung Case is final.
 

 2. As there is no dispute as to the amounts claimed from plaintiffs by defendant, they must be considered in the light of liquidated claims, and legal interest is allowed from the respective dates of payment, instead of from judicial demand, as decreed in the judgment of the lower court.
 

 3. In our opinion, defendant has been in good faith in resisting the demands of plaintiffs, and, for this reason, the plaintiffs’ claim for damages for a frivolous appeal is denied.
 

 4. It is provided in the building contract in this case that “any attorney’s fees connected with the enforcement of this contract shall be a charge against the contractor and surety, as shall also be the cancellation of all liens and privileges. . Said attorney’s fees are hereby fixed at five per cent of the amount involved.”
 

 Since this is not a suit for the enforcement of the contract, attorney’s fees are disallowed.
 

 It is therefore ordered that the judgment appealed from be amended so as to allow legal interest on the claim of $14,616.60 from September 13, 1928, until paid, and legal interest on the claim for $1,842.98 from January 30, 1929, until paid.
 

 
 *975
 
 It is further ordered that the judgment, as amended, be affirmed, and that appellees pay the cost of appeal.
 

 ST. PAUL, J., absent on account of illness, takes no part.