LAND, J.
 

 This is a concursus proceeding in which the main issue is whether Anthony M. Usner, contractor, has complied with certain plans and specifications in making alterations and additions to premises, No. 3707 Constance street, in the city of New Orleans.
 

 These alterations and additions were to be made by the contractor to a single five-room cottage, with bath, the property of the homestead association, for account of Walter W. Apken, one of its stockholders. The contract price is $4,300 and the object in view was to convert the cottage into a duplex.
 

 The contract entered into between the homestead association and the contractor- is of date April 4, 1-924, and the work was to be completed on or before 90 working days from April 9,1924.
 

 The homestead association exacted a bond in the sum of $4,300 from the contractor, who furnished -the Fidelity & Deposit Company of Maryland as surety. The contract and bond were both duly recorded.
 

 After making to the contractor three payments of $860 each; the homestead association declined to make the fourth and fifth payments of $860 each, on the ground that the contractor had not complied with the plans and specifications, and later demanded that the contractor and surety-replace certain defective work and complete certain unfinished work. Upon the default of both of them, the homestead association proceeded to provide material and workmen, and finished the work at the expense of the contractor, and at a cost of $557.72.
 

 This work -was not completed by the homestead association until March 6, 1925.
 

 On November 4,1925, the present concursus proceeding was provoked by the homestead association, and the difference between the last two payments withheld and the cost of the work done by the homestead association, or the sum of $1,162.28, was deposited in court.
 

 In the consursus proceeding the homestead association seeks to recover of the contractor
 
 *790
 
 ■and his surety $557.72, the cost of the work completed by it, $1,500 damages for the alleged failure of the contractor to construct the building according to plans and specifications, $1,350 for demurrage, and $500 as attorney’s fees.
 

 The defense of the contractor and surety to the demand of $557.72 is that this amount was expended by the homestead association for items not called for by the plans and specifications, which they allege were complied with substantially.
 

 All of the claims of the homestead association, fee of its attorney included, were rejected in the judgment of the lower court, except the claim of $4 allowed for flashing of chimney. The homestead association was ordered to deposit in court, in addition to the sum of $1,162.28 previously deposited, $553.72, being $557.72 balance on the contract, less $4 allowed for flashing of chimney, with legal interest on this sum from November 4, 1925, until so deposited or paid.
 

 The judgment of the lower court also condemned the homestead association to pay the special fees of the commissioner and of the stenographer and all costs of the coneursus proceeding, and judgment for same was rendered in favor of the contractor, surety, and claimants whose claims were allowed.
 

 The homestead association paid in full all of the workmen and furnishers of material secured by it to complete the building, at a cost of $557.72. These claimants are out of the case. The claims of the claimants for labor and material furnished to the contractor, and recognized in the judgment of the lower court, are not contested on appeal, except in the single instance hereinafter considered.
 

 As to the alleged defects in the building, the trial judge held that these were of a minor character, and that the building contract had been substantially complied with by the contractor.
 

 It was also held by him that the specific work done by the homestead association at a cost of $557.72 was not contemplated by the plans and specifications.
 

 We will consider the last holding of the trial judge first.
 

 Flashing,
 

 i[1] 1. Under the head of “Sheet Metal Work” in the specifications we find the following requirement: “Flashings to be furnished to roofer
 
 where necessary and all other necessary flashing
 
 to bé done by Sheet Metal Contractor.” . .
 

 In the second article of the building contract signed by Usner, contractor, and by the surety company, it is stipulated that:“Should any dispute arise respecting the true construction or meaning of the drawings or specifications, the same shall be decided by Mr. Sam P. Simone, the expert of said party of the first part, (Homestead Association), or by some other known capable architect, to be appointed by said party of the first part, and his decision shall be final.” ■
 

 The specifications do not require flashings specifically for the chimney or the front porch, but declare that they shall be furnished where necessary. This was a matter to be decided by the homestead association expert, Simone. He required- flashings for the chimney and front porch, which the contractor had failed to supply, and also for a. hole cut by the plumber under the bathtub and left open.
 

 The evidence shows that a chimney should be flashed to keep the water from going in .between the roof and the chimney, and that there should be a counter flashing over it to stop it from leaking.
 

 
 *792
 
 The evidence further shows that a shallow porch like that on the plans is subject to driving rains and should be flashed to. protect the sill against being rotted out.
 

 The evidence also shows that there was no reason for leaving the hole under the bathroom tub, “because the plumbing can be down and doors provided in the wall so as to get at the trimmings of the keyed-in tub.”
 

 Besides, such a hole is a mere passageway for rats and vermin into the house.
 

 The flashing was done by Henry Oheron at a cost of $37 and is allowed as a whole as necessary.
 

 Rear Gable.
 

 2. This gable was built, and the sheathing of the roof was left exposed. We do not find any complaint as to the condition of this gable among the items of unfinished and rejected work contained in letter of Simone, expert, of date August 15,1924, and addressed by him to the .homestead association.
 

 The item for boxing in and painting rear gable is not required by plans and specifications and was properly rejected.
 

 Double Doors.
 

 3. Under the head of “Interior Work” in the specifications we find the following:
 

 .“All doors to be made of Cypress and have panels, as per details, plain sticking. Glazed doors to have beads for fastening glass. Double doors to have astragals.”
 

 The plans do not show double doors at all between the front room and next room. There is only an arch, 7 feet high and 7 feet wide, between these rooms according to the plans.
 

 The homestead association has placed French glass Adding doors in this arch.
 

 We agree with Leon Weiss, a competent architect, and, in our opinion, a disinterested witness, that such doors are not required by the plans and specifications.
 

 Cement Caps for Porch and Steps.
 

 4. Under the head of “Cement Caps” .in the specifications it is provided that: “Cement caps for front porch and buttresses for front steps to be same composition as for walks, but finished with a sand finish in imitation of stone.”
 

 This specification is correctly interpreted, in our opinion, by Mr. Weiss, who states: “They should in that case either be — I should say in that particular case, they should be brick cemented over, and then floated down with sand float so as to look like stone.”
 

 Imitation stone of this character is very far from being reinforced concrete caps, which were used by the homestead association for caps on the front porch and front step railings. These are not required by the plans and specifications. This item amounted to $58, and was properly rejected.
 

 Front Brick Steps.
 

 5. The steps were taken down and rebuilt at a cost of $49, exclusive of the concrete caps, for the reason that they were out of plumb.
 

 The plans show in figures width of house, 26 feet 6 inches. When completed, the house in front was 26 feet 1 inch, and in rear 26 feet 2
 
 y2
 
 inches.
 

 The plans show in figures length of house, 71 feet. When completed, the upper side measured 69 feet 19% inches, and the lower side 70 feet 9% inches.
 

 Mr. Weiss, president of the Louisiana Architects’ Association, and for many years a homestead expert, inspected the building and compared it with the plans and specifications.
 

 He testified: “The front porch varies in depth, which was not necessary. One side
 
 *794
 
 measures 6 feet, 3 inches, and the other side, 6 feet,
 
 Sy2
 
 inches, and the plans call for 6 feet, 6 inches. That should have heen squared up. It should have been.”
 

 When asked about the mortar for the brick work, the witness replied: “Very poor mortar. If it has any cement in it, it does not evidence it. I cannot say that it has not, .but if it has, it is of an extremely poor quality, and does not do much good, because the mortar is very soft sandy mortar, and you can scratch it out with your finger-nail.”
 

 ■ The evidence in the case shows, not only that the front brick steps were out of plumb, but also that the columns on the front porch were in the same condition. The defect as to the front steps was properly corrected by the'homestead-association, which should recover $49 for this item.
 

 Columns on Front Porch.
 

 6. These columns were out of plumb, and were taken down and lined up, and properly so. However, this particular item is embraced in a general bill of W. W. Carre Company of $42, including material furnished to shore up front of building, and also in a general bill of $112.85 of Bendish & Hernandez, contractors for the homestead association, for labor paid for carpenter work, but the record does not disclose the cost of the item in question.
 

 Sewer Bine.
 

 7. The only defect pointed out as to the sewer line in the list of unfinished and rejected work made by Simone, expert of the homestead association, is the statement that: “Contractor has placed only one clean-out box.” :
 

 The homestead association not only had additional clean-out boxes installed, but built a new cast-iron sewer pipe all the way down to the city’s sewer.
 

 Under the head of “Terra-Cotta Pipe,” at page 9 of the specifications, we find the direction: “Connect
 
 to present sewer,”
 
 which is the old sewer, and is still there but not used. This item was properly rejected. The evidence fails to show separate cost of replacing additional clean-out boxes.
 

 Miscellaneous.
 

 8. The new ceiling joists rested on 1%-inch ribbon plates, and it is contended that the new joists should have been tied to the old joists with good stout wood plates.
 

 It is also contended that several floor joists under the old house around the chimneys-were cracked in half and should be replaced.
 

 But we find nothing in the plans and specifications requiring this to be done.
 

 9.' It is also complained that the contractor used old lumber for collar braces, when the specifications required new. The specifications provide that: “The contractor can use all old materials taken from present building demolitions that are in sound condition.” We find no breach of specifications in this respect.
 

 10. The painting contract amounted to $32. The work doné consisted of painting gable end, bathroom window, and putting several coats on the French glass folding doors and on the front doors, and in retouching here and there.
 

 We do not find it possible to separate the items, which should be disallowed, for painiing gable end and putting coats on the French glass folding doors, from the items for painting bathroom window, and putting coats od front doors. No itemized bill appears in the record.
 

 11. Nor do we find it possible to separate hardware for window blinds from the hard
 
 *796
 
 ware furnished for'the French glass folding doors, for the same reason.
 

 12. The contractor replaced the 2%-inch electric .bells with -4-inch "bells; and placed in line on the side of the old house several brick piers which were built out of line.
 

 [11 ] 13. Some weatherboards on the new addition had shrunken at the joints, and were replaced and repainted. to match the house painting. But these items are included in lump bills for painting, carpenter work, and materials furnished, and are not ascertainable from the record.
 

 14. This brings us to the consideration of the claim of the homestead association for damages in the sum of $1,500, because of the alleged defective and-unfinished condition of the building.
 

 No plans were ever made nor- specifications drawn by the homestead association for readjusting the building to a square in order to conform it to the original' plans and specifications. No bid was ever submitted for this purpose. All of the estimates in the record as to. the damages sought to be recovered are based upon pure guesswork and mere conjecture.
 

 The homestead association made no attempt to reconstruct the building according to plans and specifications, and, in our opinion, the damages claimed are more a gesture than anything else, since the building is short in width and in length only a few inches. And the mere fact that the mueh-'diseussed clothes closet was only 12 inches, instead of 16 inches in width, is not of such vital importance as to induce us to reject the building as a whole, especially as the specifications call for a 16-inch closet and the plans show a 12-inch closet.
 

 15. The claimi .of the homestead association for demurrage in-the sum of $1,350 is without merit.
 

 The repairs made were finished in two-weeks, after the work was commenced, and the protracted delay of the homestead association until March 6, 1925, in the making of these repairs was without reasonable justification or excuse.
 

 [14]16. It is immaterial in our opinion whether Apken made, or did not make, any objection during the entire period of construction or alteration of the building. Apken is not a party to the building contract, but is a mere stockholder of the homestead association.
 

 It is expressly provided in article 4 of the building contract: “Provided that in each ease of the said payments, a certificate shall be obtained from said expert, or any other architect selected by said party of the first part, (Homestead Association), to the effect that the work done is in accordance with the drawings and specifications, and that the payments are promptly
 
 due; said, certificate, however, in no way lessening the responsibility of said party of the second part (the contractor), neither shall it exempt said party of the second part (the contractor) from liability to replace the worlc, if it be afterwards discovered to" have been improperly done or not according to the drawings or specifications, either in execution or materials."
 

 17. In the judgment of the lower court, it is ordered that the French Market Homestead Association should deposit, in addition to the sum of $1,162.28 heretofore deposited by it, the further sum of $553.72 (being $557.72 balance on the contract, less $4 allowed to them for flashing of chimney), with legal interest on said sum from November 4, 1925, until so deposited or paid; and that the French Market Homestead Association should deposit an amount equivalent to the difference of interest earned on the $1,162.28 since the said amount was deposited in the registry of
 
 *798
 
 the court and 5 per cent., which is the legal rate of interest, until the difference in interest is deposited in the registry of the court.
 

 It is provided in section 2 of Act No. 139 of 1922 that: “When the owner files a concursus proceeding he must deposit in Court whatever funds, if any, remain in his hands after paying the costs of completing the building if he was compelled to complete it by reason of-the default of the contractor; but any claimant shall have the right to show in that suit or other appropriate proceeding that the amount claimed to have been paid by the owner for such completion was not really paid or that work was done not covered by the original contract and pending the trial of such issue the liens and privileges herein given to subcontractors and others shall remain in full force and effect.”
 

 The amount deposited by the owner under this section is clearly an unliquidated sum, subject to attack by the contractor and any claimant.
 

 The very purpose of a concursus proceeding is to liquidate whatever claims the owner may have against the contractor and surety, as well as the respective claims of furnishers of material and of workmen.
 

 We find no provision in Act No. 139 of 1922 that requires the payment of legal interest, from the date of the filing of the concursus proceeding, on the deposit made by the owner provoking same.
 

 It is quite clear that prior to the date of the filing of the concursus, November 4, 1925, the contractor had not complied with the terms of the building contract in order to exact from the owner the payment of the fourth and fifth installments, amounting to $1,720. The building had not been accepted by the owner; the owner’s acceptance had not been recorded in the mortgage office ;• and the contractor had not produced and furnished to the owner a clean lien certificate.
 

 These requirements are made, by article 4 of the building contract, conditions precedent to the payment by the owner of these installments, which, therefore, were not due by the owner at the date of the filing of the concursus, and became due and exigible only after final judgment rendered in the concursus proceeding on May 29, 1928.
 

 It is our' conclusion that legal interest should run only from that date.
 

 18. Judgment was rendered in the lower court in favor of the contractor, surety, and claimants against the homestead association for the special fee of the commissioner, the fee of the stenographer, and for all other costs of the concursus proceeding.
 

 We fail to find any provision in Act No. 139 of 1922 that justifies the imposition upon the owner, who provokes a concursus proceeding, of such fees and of the costs of the proceeding. -
 

 The homestead association has maintained a part of its claim, and is not the party entirely east. Besides, the owner, contractor, and other claimants in a concursus proceeding may be both plaintiff and defendant in the adjustment of claims and counterclaims.
 

 Act No. 139 of 1922, § 10, provides that: “In any concursus proceeding there shall be paid by preference over all other claims the costs of the proceedings in Court.”
 

 As a concursus proceeding is for the benefit of all parties interested, as well as the owner, he should not be made to bear alone the burden of the whole costs. The owner, in a concursus proceeding, cannot be treated as plaintiff in an ordinary suit and held primarily bound for all costs. In our opinion, the Legislature intended, by the provisions in sec
 
 *800
 
 tion 10 of Act No. 139 of 1922, that the costs of concursus proceedings shall be' paid, by preference over all other claims, primarily out of the funds deposited by the owner, or out of other funds to be thereafter distributed.
 

 Under the express terms of the building contract signed by the contractor and the surety, it is provided that, in the event the owner is compelled to complete the building, “the expense of the notice, and the completing of the various works,
 
 together with all costs, charges or attorney’s fees incident to the completion or enforcement of this contract shall he a charge and lien against party of the second part and his surety.”
 

 It is clear, therefore, that the contractor and his surety are liable for the costs of the concursus proceeding, and must in the end pay same.
 

 19. A fee of $500 is claimed by the attorney of the homestead association, both under the building contract entered into between the association, the contractor, and the surety, and under Act No. 139 of 1922.
 

 The commissioner reported that he was unable to fix any amount due the attorney for the homestead association, and submitted the-matter to the court for its consideration.
 

 The trial judge held that, as all of the claims of the homestead association, with the exception of $4 allowed by the commissioner for the flashing of a chimney, were denied, the claim of the homestead attorney for a fee should be rejected.
 

 It is provided in section 10 of Act No. 139 of 1922 that: “In any concursus proceeding the Attorney of the owner shall be entitled
 
 to a prior fee
 
 to be recovered against the fund deposited or against the surety, but this fee shall not be paid in preference to the claims of sub-contractors, journeymen, eartmen, truckmen, laborers or material men; and any claim of demurrage or liquidated damage which the owner may have against the contractor may be allowed only with the same rank.
 

 “Should
 
 the owner not recover all he claims
 
 in the concursus proceeding
 
 the Attorney’s fees as fixed hy the Court shall
 
 be reduced proportionately.”
 

 In the present case, the homestead attorney has claimed $557.72 as the expense of completion of the building, $1,500 damages for violation of the building contract, and $1,350 as demurrage or liquidated damages.
 

 The items of damages claimed, amounting to $2,850, have been rejected, and the claim for cost of completion of the building has been reduced from $557.72 to $86, on appeal.
 

 In other words, the homestead’s attorney has recovered $86 on a claim of $3,407.72, or about 2
 
 %
 
 per cent, of his claim.
 

 The record does not disclose that “a prior fee” for the homestead attorney was fixed at all in the case by the lower court.
 

 As we interpret the provisions of section 10 of Act No. 139 of 1922, relative to attorney’s fees, it is intended that the court shall fix the fee of the attorney of the homestead
 
 “prior”
 
 to the trial of the concursus proceeding, i. e., a tentative fee at the time the petition for concursus is filed by the owner, and subject to reduction by the court thereafter, in proportion to the amount of the claims recovered. Such fee is not limited to a mere percentage on amount recovered, although it may be later reduced. Attorney of homestead is allowed $100 for filing and conducting concursus proceedings in the present case.
 

 20. Henry Scheibe paved alleyways on each side of the building at a cost of $180.50, under a verbal contract with the contractor.
 

 
 *802
 
 Scheibe also did extra paving work at a cost of $21. The contractor did not submit to the homestead association a separate estimate in writing for the extra work and obtain the written consent of the homestead association thereto, as required by the terms of the building contract.
 

 Scheibe was paid $100 on the contract price of $180.50, leaving a balance due him of $80.50, which has been allowed by the judgment appealed from.
 

 As Scheibe is not entitled to the price of the extra work, we decline to amend the judgment so as to include same, as prayed for in the answer of Scheibe, made to the appeal in this case.
 

 21. In conclusion, we find that the French Market Homestead Association was justified in provoking the present concursus proceding for the following reasons:
 

 First. The contractor did not fully comply with the plans and specifications.
 

 Second. The contractor violated his contract by receiving the first three payments on the work, aggregating $2,580, and failing to pay off the claims for material furnished, amounting to $2,338.79.
 

 Third. The contractor violated his contract by not furnishing to the homestead association a clean lien certificate, as required by the terms of the contract. Three of the furnishers of material, with claims totaling $1,100.92, recorded liens against the building. The claims of all of these claimants, with and without recorded liens, are recognized in the judgment of the lower court.
 

 Fourth. As the contractor resisted the demand of the homestead association to complete the building, a decision by a tribunal of justice became necessary and could not be avoided.
 

 It is ordered that the judgment appealed from be amended in the following particulars.
 

 First. That the item of $557.72, balance on contract, less the sum of $49 for rebuilding front brick steps, and less the further sum of $37 for flashing chimney, front porch, and hole under bathtub, or the sum of $471.72, be deposited in court, by the French Market Homestead Association.
 

 Second. That legal interest on the sum of $471.72 be allowed from date of judgment, May 29, 1928, until paid.
 

 Third. That interest be disallowed on the deposit of $1,162.28, made at time of the filing of the concursus.
 

 Fourth. That there be judgment for Arthur J. Peters, attorney for homestead, against contractor, Anthony M. Usner, and surety, Fidelity & Deposit Company of Maryland, in the sum of $100 as attorney’s fees, with legal interest from May 29, 1928, until paid.
 

 Fifth. That judgment for special fees of commissioner, stenographer, and all . costs of these proceedings, rendered in favor of contractor, Anthony M. Usner, surety, Fidelity & Deposit Company of Maryland, and furnishers of material, be set aside; and that there be judgment; in favor of the French Market Homestead Association and against said contractor and said surety in the sum of $350 as a fee to Pierre D. Olivier, special commissioner, and in the sum of $500 as fees to Henry J. Gassie, stenographer, for reporting and transcribing the testimony, and for all costs of these proceedings.
 

 It is now ordered that the judgment appealed from, as amended, be affirmed, and that the costs of appeal be paid by said contractor and said surety.