REGAN, Judge..
This is a concursus proceeding instituted by Philip E. James, Notary Public, to determine which of the parties cited herein, Mrs. Hazel R. M. Bowen, the owner, Ory & Baker, the contractors, the Trinity Universal Insurance Company, their surety, and the financing agent, Eureka Homestead Society, is entitled to the sum of $574 deposited by the Notary in the Registry of the Court.
From a judgment awarding Mrs.- Hazel R. M. Bowen the sum of $539 and Ory & Baker $35, Ory & Baker have prosecuted this- appeal. '
The record reveals that on September 1, 1950, Mrs. Hazel Bowen executed a building contract with Ory & Baker to construct a residence costing $14,100, payable in six installments. In conjunction with the building contract, these parties entered into an agreement with the Eureka Homestead Society, by virtue of which the sum of $12,600 was deposited with Philip E. James, Notary for the homestead, to be disbursed by him in accordance with the schedule of payments enumerated in the contract.
The contract stipulated that the residence was to be completed as of December 15, 1950; if the contractors failed therein on or before the time specified they should pay to or permit the owner to retain out of any amount due them on the contract, the sum of $7 for each day that the work remained incomplete. . The relevant portion of the.contract provided:
“If the delay in the completion of this contract is caused by circumstances beyond contractor’s control, the contractor must serve written no-tic thereof on the owner to obtain additional time for the completion of the contract without penalty.
«* * * * * *
“In the event of the delay of said work from rains, strikes, or other unavoidable delays beyond the control of the said contractor, he, said contractor, shall be entitled 'to an additional length of time corresponding tp the time lost by reason of such delays, provided that said contractor shall not be entitled to such extension unless said party of the first part shall be notified of such delay in writing within forty-eight hours from the time such delay shall- have been occasioned and the reason thereof.”
The residence was not completed on December 15, 1950, and, in consequence thereof, the Eureka Homestead Society ad *161 dressed a letter dated December 27, 1950, to Ory & Baker which reads in part as follows :
“Contract for construction of above residence specified that said building was to be complete and. ready, on or before date of December 15, 1950 and subject to liquidated damages at the rate of $7.00 per day. Upon inspection on this date, we note that there is much work to be completed and also wish to direct your attention to following work, which was found to be unsatisfactory.
* * * * * * 99
Following receipt of the above letter Ory - & Baker continued to work on the dwelling and, on March 7, 1951, Mrs. Bowen moved into the premises in conformity with a letter addressed to her by Ory & Baker under date of March 6, 1951, which reads:
“It is agreeable that you move in 1512 Riviera Street on March 7th, 1951 even though the house is not completed.
“It is understood that your occupancy will not signify formal acceptance. Acceptance to .be made upon final completion which will be done at the earliest possible date.
“By occupancy it is agreed that liquidated damages shall terminate on March 7th.”
When the final installment under the contract matured the owner insisted upon the payment of damages for delay and the sum of $574 was withheld therefrom, subject to the disposition of her claim for demurrage at $7 per day covering a period of eighty-two days or from December 15,' 1950 to March 7, 1951. Thereupon the Notary deposited the aforementioned sum in the registry of the Court.
During the course of the trial in the lower court, Ory & Baker endeavored to introduce evidence to reveal the reasons for the delay in completing the contract and asserted since they had not been formally placed1 in default after December 15, 1950, that liquidated damages could not be charged against them.
The trial court refused to permit the contractors to introduce evidence to divulge the reasons, if any, for the delay in completing the contract and was of the further opinion that there was no necessity for placing the contractors in default after December 15, 1950. In consequence of these conclusions the court awarded to Mrs. Bowen the sum of $539. The court was of the further opinion that Ory & Baker were entitled to the sum, of $35 in view of the fact that the contractors were delayed for a period of five days from the inception of the contract because of the absence of a survey which the owner had agreed to furnish. Mrs. Bowen has failed to prosecute an appeal from this part of the judgment or to answer the appeal taken by Ory & Baker, therefore, we are unable to consider the validity of the award of $35 to the contractors.
The only questions posed for our consideration are whether the trial judge was correct in refusing to permit the contractors to introduce evidence showing the causes for delay and whether it was necessary that they be placed in default after. December 15, 1950.
We are of the opinion that the trial judge was correct in refusing to permit the contractors to introduce evidence revealing the causes for delay in view of the fact that the contract provided that there shall be no extension of time unless the contractors notify the owner “in writing within forty-' eight hours from 'the time any delay shall have been occasioned and the reason thereof.” It is conceded that no written notice for extension of time was ever given by the contractors to the owner.
The Supreme Court disposed of this question in the case of Equitable Real Estate Co., Limited v. National Surety Company, 1913, 133 La. 448, 63 So. 104, 106, and through Chief Justice Monroe said:
“It is admitted that no written claim for an extension of time was made *162 during the execution of the contract; but it is argued, upon the basis of the testimony to which we have referred, that the contractors were delayed by the architect, and thereby became entitled to an extension of time exceeding that for which the demurrage is claimed, and that an allowance on that account should now be made by the court. The function of the court, however, is to interpret the contract, where interpretation is required, and otherwise to enforce it as written, and the stipulation that no allowance of time shall be made ‘unless a claim therefor is presented, in writing, to the architect, within forty-eight hours of the occurrence of the delay,’ requires no interpretation, but is to be enforced as written, from which it follows that, in view of the admission that no claim in writing was made as thus provided, the testimony offered to prove merely that delays occurred, upon which such claims might have been predicated, was irrelevant and should have been excluded on plaintiffs’ objection.”
The foregoing case was cited with approval in Shuff v. Life & Casualty Insurance Co. of Tennessee, 1927, 164 La. 741, 114 So. 637.
With respect to the second question posed for our consideration, the contractors insist that they were not placed in default after December IS, 1950, and hence no liquidated damages accrued in favor of Mrs. Bowen. Several cases, which we do not believe to be pertinent to the issues involved herein, are cited by counsel to the effect that where a breach of contract is passive a putting in default is a condition precedent to recovery of liquidated damages and that in an action for the balance due on the contract for the construction of a building, the admission of an owner’s evidence in the record sustaining a claim for liquidated damages without showing that the contractors were placed in default is error.
We are of the opinion that those cases bear no analogy to this one for the reason that the only manner in which an extension of time could be procured under the terms of this contract was for the contractors to give the owner a notice thereof, in writing, and it is conceded that no notice for extension of time was ever given by the contractors to the owner, therefore, their failure to complete the building as of December 15, 1950, automatically placed them in default without the necessity of any further action on the part of the owner.
However, if we should assume ar-guendo, a view most favorable to the contractors, that placing them in default was necessary, we are then of the opinion that the contractors were placed in default by virtue of the letter dated December 27, 1950, addressed to them by the Eureka Homestead Association, the financing agency in the transaction, which letter specifically pointed out to them that they were in default as of December 15, 1950, and that they had subjected themselves to liquidated damages at the rate of $7 per day.
Furthermore, the contractors obviously recognized that they were in default because in their letter dated March 6, 1951, addressed to Mrs. Bowen, they stated:
“By occupancy it is agreed that liquidated damages shall terminate on March 7th.”
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.