159 So.2d 156 (1963)
Nelson MEAUX, Plaintiff and Appellee,
v.
SOUTHERN CONSTRUCTION CORPORATION et al., Defendants and Appellants.
No. 973.
Court of Appeal of Louisiana, Third Circuit.
December 3, 1963.
Rehearing Denied January 14, 1964.
Patin & Patin, by John A. Patin, Lake Charles, Davidson, Meaux, Onebane & Donohoe, by Joseph Onebane, Lafayette, for defendants-appellants.
Russell T. Tritico, Lake Charles, for plaintiff-appellee.
Before SAVOY, CULPEPPER and HOOD, JJ.
HOOD, Judge.
Plaintiff, Nelson Meaux, instituted this suit against Southern Construction Corporation *157 and Trinity Universal Insurance Company, the latter being the surety on a performance bond furnished by Southern, for the balance alleged to be due Meaux under a painting contract entered into between him and Southern, and for "extra work" allegedly performed by Meaux in connection with that contract. Plaintiff contends that he is entitled to recover $7,350.24 as the balance due on the painting contract, and the sum of $6,542.25 for "extra work" which he performed for the defendant.
Southern filed an answer and a reconventional demand in which it admitted that it owes plaintiff $7,182.01 as the balance due on the painting contract, and the additional sum of $1,874.25 for "extra work" performed by plaintiff in connection therewith, but it denies that it is indebted to plaintiff for any other amounts. Southern further, as plaintiff-in-reconvention, alleges that it is entitled to recover from Meaux the sum of $3,650.00 as liquidated damages for Meaux's delay in performing the painting contract, and the additional sum of $5,622.50 for moneys advanced and paid to Meaux in excess of the amounts due him on another contract relating to the construction of a housing project in Opelousas, Louisiana.
Trinity Universal Insurance Company filed an answer and a third-party petition in which it denies liability to plaintiff, but alternatively alleges that in the event judgment is rendered against Trinity, then the latter is entitled to recover the same amount from Southern and from Charles R. Grein and George L. Grein, who are indemnitors on the performance bond which Trinity had furnished. Southern Construction Corporation, Charles R. Grein and George L. Grein are named as third-party defendants in that action.
After trial on the merits, the trial judge concluded that Meaux was entitled to recover from Southern (or its surety) the total sum of $9,056.26, of which amount $7,182.01 represented the balance due on the painting contract and $1,874.25 represented the amount determined to be due for "extra work" performed in connection with that contract. The trial judge further concluded that Southern was entitled to recover $4,491.50 from Meaux as the amount overpaid the latter on the Opelousas Project contract, but that Southern was not entitled to recover liquidated damages for plaintiff's delay in completing the painting contract on which the present suit is based. Judgment was rendered, therefore, in favor of Meaux against Trinity for $4,564.76, being the difference between the two conflicting claims. Judgment further was rendered for the same amount in favor of Trinity and against Southern Construction Corporation, Charles R. Grein and George L. Grein, in solido. An appeal from that judgment was taken by Southern, Charles R. Grein and George L. Grein, the appellants contending primarily that the trial court erred in disallowing Southern's reconventional demand of $3,650.00 as liquidated damages. Plaintiff has answered this appeal contending that the trial judge erred in failing to allow the full amount claimed by him as "extra work" on the Lake Charles project.
All parties apparently agree with the conclusion reached by the trial court that there is a balance of $7,182.01 due Meaux under the original contract. They also agree that Southern overpaid Meaux the sum of $4,491.50 on the Opelousas project contract, and that Southern is entitled to recover that amount from Meaux or to off-set or credit it against the claim Meaux has against Southern.
The only questions presented on this appeal, therefore, are: (1) whether Southern, as plaintiff-in-reconvention, is entitled to recover from Meaux the liquidated damages claimed by it because of Meaux's failure to complete the performance of his painting contract within the time agreed upon in such contract, and (2) whether plaintiff is entitled to recover more than $1,874.25 for "extra work" allegedly performed by him for Southern in connection *158 with the Lake Charles project and, if so, how much should he recover.
The evidence shows that in 1960 Southern Construction Corporation entered into a contract with Lake Charles Housing Authority, under the terms of which Southern agreed to construct 70 low-rent housing units for the Housing Authority. Southern then entered into a subcontract with plaintiff Meaux, in which contract Meaux agreed to furnish all of the labor required for painting these units.
Article VI of the subcontract entered into between Meaux and Southern, relating to the Lake Charles project, reads as follows:
"The Subcontractor agrees that the work under this contract is to be begun and provided for immediately and carried on promptly; and the Subcontractor agrees to complete the work covered by his contract in such time and in such manner that the Contractor may complete all of the work included in its contract with the Owner on or before 1st day of Aug., 1961. It being agreed that work will be carried on as required by Contractor, promptly and efficiently and without delaying other branches of work; and if necessary, certain parts of the work shall be prosecuted in preference to others. In order to secure the execution of this work at, and within, the time specified, it is hereby distinctly agreed that damages arising from the nonfulfillment of this contract as regards time, shall be deducted from the contract price as liquidated damages and not in the nature of a penalty and shall be Fifty Dollars ($50.00) per calendar day.
"Should the Subcontractor be delayed in the prosecution or completion of the work by the act, neglect or default of the Owner, the Contractor, or by damage caused by fire or other casualty for which the Subcontractor is not responsible or by the combined action of the workmen in no way caused by or resulting from default or collusion on the part of the Subcontractor, then the time herein fixed for the completion of the work shall be extended the number of days that said Subcontractor has been thus delayed but no allowance or extension shall be made unless a claim therefor is presented in writing to the Contractor within forty-eight (48) hours of the occurrence of such delay. No additional compensation in connection with extension of time will be allowed unless specific agreement is made at the time such extension is granted." (Emphasis added.)
Although Meaux agreed to complete the work covered by his contract in such time as to enable Southern to complete all of its work before August 1, 1961, the evidence shows that Meaux did not complete the work covered by the subcontract until October 12, 1961. Southern, therefore, as plaintiff-in-reconvention, seeks to recover liquidated damages against Meaux at the rate of $50.00 per day during this period of delay. Although it contends that the delay extended over a period of 73 days, making the stipulated damages amount to $3,650.00, we compute the delay to be only 72 days, and accordingly the maximum stipulated damages would be $3,600.00. The trial judge, however, disallowed defendants' claim for liquidated damages completely, and assigned as his reason for doing so that "Southern has failed to prove that the late finishing date was attributable to plaintiff."
We think it is immaterial whether the delays were or were not attributable to plaintiff Meaux, because the evidence shows that Meaux did not at anytime present a written claim to the contractor Southern for an extension of time because of such delays. The contract specifically provides that "no allowance or extension shall be made unless a claim therefor is presented in writing to the Contractor within *159 forty-eight (48) hours of the occurrence of such delay."
It is well settled in Louisiana law that legal agreements have the effect of law as between the parties, that the courts are bound to give legal effect to contracts according to the true intent of the parties, and that the intent is to be determined by the words of the contract when these words are clear and explicit and lead to no absurd consequences. LSA-Civil Code, Article 1945; Pothier v. Barber Laboratories, 227 La. 357, 79 So.2d 481; Gordon v. Unity Life Ins. Co., 215 La. 25, 39 So.2d 812; Oil Field Supply & Scrap Material Co. v. Gifford Hill & Co., 204 La. 929, 16 So.2d 483.
In Equitable Real Estate Co. v. National Surety Co., 133 La. 448, 63 So. 104, the contractors failed to complete the construction of a building within the time agreed upon. They resisted a claim for demurrage, however, on the ground that the delay was attributable to the architect rather than to the contractors. The written contract involved there contained the following provision:
"Art. 8. Should the contractor be delayed in the prosecution and completion of the work, by the act, neglect, or default of the owner, or the architect, * * * then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost, * * * which extended period shall be determined by the architect; but no such allowance shall be made unless a claim therefor is presented, in writing, to the architect, within forty-eight hours of the occurrence of the delay." (Emphasis added.)
In holding that the contractors were liable for the delay penalties provided in the contract, our Supreme Court said:
"It is admitted that no written claim for an extension of time was made during the execution of the contract; but it is argued, upon the basis of the testimony to which we have referred, that the contractors were delayed by the architect, and thereby became entitled to an extension of time exceeding that for which the demurrage is claimed, and that an allowance on that account should now be made by the court. The function of the court, however, is to interpret the contract, where interpretation is required, and otherwise to enforce it as written, and the stipulation that no allowance of time shall be made `unless a claim therefor is presented, in writing, to the architect, within forty-eight hours of the occurrence of the delay,' requires no interpretation, but is to be enforced as written, from which it follows that, in view of the admission that no claim in writing was made as thus provided, the testimony offered to prove merely that delays occurred, upon which such claims might have been predicated, was irrelevant and should have been excluded on plaintiffs' objection. Even, however, if that testimony could be considered, for the purpose for which it was offered, we find it unconvincing. * * *." (Emphasis added.)
The above holding was quoted with approval in Shuff v. Life & Casualty Ins. Co. of Tennessee, 164 La. 741, 114 So. 637, and in James v. Bowen, La.App.Orl., 69 So.2d 159.
In James v. Bowen, supra, the building contract stipulated that if the contractors failed to complete the building within the specified time the owner would be entitled to demurrage of $7.00 for each day the work remained incomplete. The contract further provided:
"If the delay in the completion of this contract is caused by circumstances beyond contractor's control, the contractor must serve written notice thereof on the owner to obtain additional time for the completion of the contract without penalty.
*160 * * * * * *
"In the event of the delay of said work from rains, strikes, or other unavoidable delays beyond the control of the said contractor, he, said contractor, shall be entitled to an additional length of time corresponding to the time lost by reason of such delays, provided that said contractor shall not be entitled to such extension unless said party of the first part shall be notified of such delay in writing within forty-eight hours from the time such delay shall have been occasioned and the reason thereof." (Emphasis added.)
In holding that demurrage was due by the contractor and that the causes of the delay were immaterial, the court stated:
"We are of the opinion that the trial judge was correct in refusing to permit the contractors to introduce evidence revealing the causes for delay in view of the fact that the contract provided that there shall be no extension of time unless the contractors notify the owner `in writing within forty-eight hours from the time any delay shall have been occasioned and the reason thereof.' It is conceded that no written notice for extension of time was ever given by the contractors to the owner.
"The Supreme Court disposed of this question in the case of Equitable Real Estate Co., Limited v. National Surety Company, 1913, 133 La. 448, 63 So. 104, 106, * * *."
Applying these rules to the instant suit we must hold that the parties here are bound by the terms of their written agreement. Under the clear and unambiguous provisions of Article VI of that contract, Meaux was not entitled to any extension of time for completing the work he had agreed to perform unless a claim therefor was presented in writing to the contractor, Southern, within 48 hours of the occurrence of the delay. He did not complete his work until October 12, 1961, 72 calendar days after he had agreed to complete it, and no written claim for an extension of time was ever presented to the contractor. Under the terms of that agreement, therefore, Southern is entitled to deduct from the contract price liquidated damages of $50.00 per calendar day for this 72-day period, amounting to $3,600.00. In our opinion the trial judge erred in failing to allow these liquidated damages.
The next issue presented relates to the amount which plaintiff is entitled to recover from Southern for "extra work" which he performed in connection with the Lake Charles project.
Article IV of the contract entered into between Meaux and Southern, relating to the Lake Charles project, provides:
"The Subcontractor hereby agrees to make any and all changes, and perform the work that the Contractor may require without nullifying this Agreement, at a reasonable addition to or deduction from, the contract price hereinafter named, and pro rata to the same. NO ALTERATIONS OR CHANGES SHALL BE MADE, HOWEVER EXCEPT UPON THE WRITTEN ORDER OF THE CONTRACTOR. The amount to be paid by the Contractor, or allowed by the Subcontractor by virtue of such alterations shall be stated in such order."
Southern admits that it authorized some alterations or changes in the contract, and that it owes Meaux the additional sum of $1,874.25 for this extra work. It denies, however, that it authorized any other alterations or changes. It contends that it is not liable for any extra work done by plaintiff unless such work was performed pursuant to a "written order of the Contractor," and that the burden of proof rests upon plaintiff to show not only that the extra work was performed but that it was authorized by the written order of the contractor.
*161 In attempting to prove that he performed "extra work" amounting to $6,542.25, plaintiff introduced a number of time cards which purport to reflect the number of painters who performed extra work on certain days, and the hours each worked. Some of these cards were signed by employees of Southern and others were unsigned. Mr. Phillip Ribbeck, who aided plaintiff in looking after this job and who filled out these cards, testified that the cards which were unsigned represented extra work done while Southern had no superintendent on the project. Mr. Ribbeck admitted, however, that he knew that the extra cards had to be signed by an authorized representative of Southern before the latter would accept them. The trial court found that these cards were not accurate and could not be considered in determining how much extra work had been performed, because it appears that two or more cards were made out for the same date, and some of the cards show that from 16 to 23 painters worked at the same time on seven different days, whereas plaintiff and his witnesses consistently testified that no more than eight painters ever worked at any one time on that project. We cannot say that the trial judge erred in refusing to consider these time cards.
The general rule in Louisiana is that a provision in a written construction contract that no claims for extra work or materials shall be allowed unless made in writing is valid and binding upon the parties, and that when the contract so provides, and there is no written order for such extras, no recovery can be had for them in the absence of a waiver of that stipulation. Monarch v. Board of Com'rs of McDonough School Fund of City of New Orleans, 49 La.Ann. 991, 22 So. 259; O'Leary v. Board of Port Com'rs for Port of New Orleans, 150 La. 649, 91 So. 139; French Market Homestead Ass'n v. Usner, 170 La. 783, 129 So. 202; Ault & Burden v. Shepherd et al., 8 La.App. 595. Although it has been held generally that parol evidence is inadmissible in such cases to prove the performance of the extra work (Ault & Burden v. Shepherd et al., supra), parol evidence has been admitted and considered in some instances, particularly where the extra work has been so great that it cannot be supposed to have been made without the knowledge of the owner. See Peterson v. Peralta, 3 La.App. 516, and authorities cited therein.
In the instant suit the trial judge permitted both written and parol evidence to be introduced by the plaintiff in support of his claim for extra work. After reviewing that evidence, however, he concluded that plaintiff had failed to establish his claim. Our review of the entire record convinces us that the trial judge was correct in this finding. In arriving at that conclusion, we do not mean to express an opinion as to whether or not parol evidence should have been admitted, since even with its admission plaintiff has failed to sustain his burden of proof. We think the trial court correctly determined that plaintiff is entitled to recover only the sum of $1,874.25 for the extra work he performed, being the amount which Southern admits that it owes.
According to our figures, there is due plaintiff a balance of $7,182.01 on the contract, and the additional sum of $1,874.25 for extra work, making a total of $9,056.26. From that sum defendants are entitled to offset or to have deducted the sum of $3,600.00, being the liquidated damages due by plaintiff, and the sum of $4,491.50, which is the amount of the overpayment made to plaintiff on the Opelousas project. This leaves a balance of $964.76 due plaintiff. In our opinion the judgment rendered by the trial court should be amended by reducing the awards to that amount.
The judgment appealed from, therefore, is amended and recast to read as follows:
It is ordered, adjudged and decreed that there be judgment, and the same is hereby rendered, in favor of Nelson Meaux and against Trinity Universal Insurance Company *162 for the sum of $964.76, with interest thereon at the rate of 5 percent per annum from date of judicial demand until paid, and for all costs of this suit.
It is further ordered, adjudged and decreed that there be judgment, and the same is hereby rendered, in favor of Trinity Universal Insurance Company and against Southern Construction Corporation, Charles R. Grein and George L. Grein, in solido, for the sum of $964.76, with interest thereon at the rate of 5 percent per annum from date of judicial demand until paid, and for all costs of this suit.
Except as herein amended, the judgment appealed from is affirmed. All costs of this appeal are assessed to plaintiff-appellee.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
TATE, J., dissents and assigns written reasons.
SAVOY, J., dissents.
TATE, Judge (dissenting).
I respectfully dissent from the denial of the plaintiff subcontractor's application for rehearing.
In our original opinion, the majority allows the defendant general contractor credit for demurrage, based upon an extremely technical point which this defendant did not rely upon nor brief in the trial court or when this appeal was heard by this court. It is quite probable that the extremely inequitable result so reached can be attributed to this circumstance; for the plaintiff did not have the opportunity to present to the panel which heard this appeal those authorities, now cited to us in support of his application for rehearing, which indicate that the technical contract provision relied upon by the majority is not applicable under the present circumstances.
The majority opinion of this court allowed the defendant contractor a credit under its reconventional demand for $3600 in liquidated damages because the plaintiff did not complete his painting contract until 72 days after the contract date. The contract provided for liquidated damages of $50 per day for each day's demurrage.
The reconventional demand of the defendant contractor was tried below on the question of whether this 72-day demurrage resulted from the fault of the plaintiff painting subcontractor. After much evidence at the trial, the district court concluded that the delay did not result from the fault of the plaintiff subcontractor and his painters. The court therefore refused to allow the defendant credit for such liquidated damages.
There was evidence in the record which shows that, because of delays due to other subcontractors and those due to lack of supervision by the defendant general contractor, the plaintiff subcontractor could not possibly even begin some of the painting operations required of him by August 1st (the intended date of contract completion).
The necessary pre-painting construction activities had not been completed on many of the 72 housing units by the intended completion date of August 1st. See, e.g., the testimony of the defendants' manager at Tr. 280-284 and 287, as well as that of the plaintiff's witnesses. In fact, the defendant contractor's manager on the scene after the intended completion date, continued to supervise and to approve work done by the plaintiff subcontractor, without raising any question that the plaintiff had not applied in writing for a delay-beyond the contract completion date. Further, as the plaintiff points out, this written request requirement for an extension, was not applied to any of the other subcontractors doing work in the extended period beyond the contract completion date of August 1st. See Tr. 184-185.
*163 Yet the majority passes over these circumstances and disregards all the evidence in the record on the question as superfluous, because, in the contract's fine print (previously ignored by the pleadings and by the argument of counsel), supposedly the subcontractors were required to apply in writing 48 hours before any delay in order to secure an extension.
This overlooks, of course, that this requirement of written application for extension could be waived by the parties, and that this technical provision in the contract can be regarded as modified by the subsequent conduct of the parties. (Various other of the technical contract provisions were also ignored in the rather loose administration of this construction job.)
The failure of the general contractor to require written extensions from any of the subcontractors doing work beyond the intended contract completion date of August 1st, could have resulted, of course, because, due to multiple circumstances resulting from factors beyond the control of any of the individual subcontractors, most of them could not complete their share of the project by the completion dateto require written notification of a fact obvious to the general contractor itself, would be a frivolous and useless formality, which the general contractor by its general conduct waived under the circumstances.
As a matter of fact, the necessity of a written demand as a prerequisite for an extension, was not specially raised by the defendant contractor's reconventional demand. The complete absence of reliance by the defendant contractor upon a claim so inequitable under the circumstances (where the general contractor had full knowledge that the entire contract completion was delayed beyond August 1st, including some of the construction which had to be finished before the plaintiff could even begin performance of part of his painting subcontract), is strongly indicative that in fact all parties did consider this technical contract requirement to be waived or non-operative under the circumstances.
The writer is therefore of the strong belief that a rehearing should be granted to allow the plaintiff his day in court on the question, and to allow this court the benefit of the full argument and consideration of authorities to the effect that this extremely technical and inequitable defense is not available to the defendant under the circumstances.