163 So.2d 112 (1964)
Willard E. ROFF and Johnny W. Rouse, d/b/a R. & R. Brick and Stone Construction Company, Plaintiff and Appellee,
v.
SOUTHERN CONSTRUCTION CORPORATION, Trinity Universal Insurance Company and the Housing Authority for the City of Lake Charles, Louisiana, Defendants and Appellants.
No. 1081.
Court of Appeal of Louisiana, Third Circuit.
April 21, 1964.
*113 Patin & Patin, by John A. Patin, Lake Charles, Davidson, Meaux, Onebane & Donohoe, by John Torian, Lafayette, for defendants-appellants.
L. Carroll Fogleman and George W. Liskow, Lake Charles, for plaintiff-appellee.
Before TATE, CULPEPPER and HOOD, JJ.
HOOD, Judge.
This is a suit by a subcontractor, R. & R. Brick and Stone Construction Company, a partnership composed of Willard E. Roff and Johnny W. Rouse, for amounts alleged to be due plaintiff in connection with the construction of a portion of a housing project in the City of Lake Charles. The suit was instituted against Southern Construction Corporation, the general contractor; Trinity Universal Insurance Company, the surety on the general contractor's building contract bond; and against the Housing Authority for the City of Lake Charles, the owner. Plaintiff demands judgment for the sum of $5,516.59, being the balance alleged to be due on the subcontract and for extra work performed, for $36.75 as the expense of preparing and filing the lien, and for the additional sum of $3,500.00, as damages alleged to have been sustained by plaintiff for injury to its reputation, loss of business, etc. A claim or lien in the sum of $5,516.00 was recorded by plaintiff as authorized by LSA-R.S. 38:2242. After the recordation of this claim, the general contractor bonded the claim or lien under the provisions of LSA-R.S. 9:4841 or LSA-R.S. 9:4941, with defendant Trinity as the surety on that bond.
On motion of the Housing Authority for the City of Lake Charles, a summary judgment was rendered dismissing the suit as to that defendant. No appeal has been taken from that judgment.
Each of the remaining defendants filed an answer and a reconventional demand, alleging that plaintiff had been overpaid the sum of $33.57, and reconvening for judgment against plaintiff for that amount. Defendant Trinity Universal Insurance Company also filed a third party action against Southern Construction Corporation, Charles R. Grein and George L. Grein, alleging that said third party defendants had obligated themselves to indemnify Trinity against any loss which it may sustain under bonds executed by Southern as principal and Trinity as surety, and demanding judgment in favor of Trinity and against said third party defendants for any amounts which it might be condemned to pay plaintiff.
After trial on the merits, judgment was rendered in favor of plaintiff and against Southern and Trinity, in solido, for the *114 principal sum of $3,600.54, and judgment further was rendered in favor of Trinity and against the third party defendants, Southern, Charles R. Grein and George L. Grein, for the same amount. Southern, Trinity, Charles R. Grein and George L. Grein have appealed. Plaintiff has answered the appeal praying that the amount of the award be increased.
The evidence shows that on October 6, 1960, plaintiff entered into a subcontract with the general contractor, Southern, under the terms of which plaintiff agreed to lay, clean and caulk bricks in connection with the construction of a number of houses for the owner, Housing Authority for the City of Lake Charles. The subcontract provides that as consideration for this work plaintiff is to be paid "$55.00 per thousand for the laying of bricks." Thirty-five houses were completed under the general contract. Although plaintiff laid the bricks for these houses, it failed to caulk and wash the bricks as required by the subcontract, and it was necessary for Southern to have that work done by someone else. Plaintiff and defendants disagree as to the number of bricks which were laid by the former, and as to the "back charges" to which Southern is entitled because of the expense which it incurred in caulking and washing the bricks. Plaintiff also claims that it is entitled to recover from defendants additional amounts for a number of items of "additional or extra work" performed at the instance and request of Southern, all of which claims are denied by defendants. And, finally, plaintiff contends that it is entitled to recover damages for injury to its reputation and for loss of business and inconvenience. Each of the disputed items will be considered separately.
Plaintiff contends that the total indebtedness of Southern to plaintiff under the provisions of the subcontract amounted to $18,378.27, this figure being arrived at by determining the number of bricks actually laid and then computing the amount due at $55.00 per thousand. Defendants contend that Southern's indebtedness under the subcontract was only $17,982.36. The difference is due to a dispute as to the number of bricks which were used in one group of houses. Plaintiff maintains that 9,973 bricks were used on each of 18 houses which were constructed, designated as "B type houses," while defendants contend that only 9,573 bricks were used on each of those houses. The trial judge concluded that the larger number of bricks was used, and we think the evidence supports his conclusions to that effect. We concur in the finding of the trial court, therefore, that the total indebtedness of Southern to plaintiff under the terms of the subcontract, based on the number of bricks laid, was $18,378.27.
Plaintiff originally alleged that it has been paid in cash by Southern the sum of $15,007.74 to be applied on the subcontract, but during the trial and with permission of the court, plaintiff amended its pleadings to show that only $14,822.56 had been paid. Defendants contend that Southern paid $15,088.56 to be applied on the subcontract, the dispute between the parties being based largely upon whether one payment made by Southern to plaintiff should be credited on the indebtedness due on this subcontract or on another account. The trial judge concluded, correctly we think, that only $14,822.56 has been paid to plaintiff by Southern to apply on this subcontract.
Plaintiff concedes that it failed to caulk and to wash the bricks, as it was required to do under the subcontract, and that Southern incurred expenses in having that work done. It alleges that Southern is entitled to a "back charge" or credit of $503.00 for caulking and a back charge of $600.00 for washing the bricks, making a total of $1,103.00 which plaintiff admitted in its original petition that it owed the general contractor for these items. During the trial plaintiff moved to amend its petition to allege that the credit for caulking should be reduced from $503.00 to $375.00. The trial *115 judge found, however, that Southern was entitled to a credit of $503.00 for caulking, and we agree with that finding. The court further allowed a back charge of $800.00 for washing the bricks, which plaintiff maintains is excessive and defendants argue is inadequate. Defendants contend that Southern incurred expenses in the amount of $1,598.25 for washing the bricks, and that it incurred additional expenses of $1,092.00 for repainting some of the woodwork on the houses, which they allege became necessary because of plaintiff's failure to timely wash the brickwork.
The evidence is conflicting as to the expenses which Southern incurred in washing the bricks, as to the number of man hours and expenses which should have been required for that work, and as to the manner in which the washing operations were performed by Southern's employees. The trial judge, after carefully analyzing all of the evidence relating to this issue in his excellent reasons for judgment, concluded that Southern was entitled to a back charge of $800.00 for washing the bricks, and that it was not entitled to any additional sum for repainting woodwork after the bricks had been washed. In our opinion the evidence supports that conclusion of the trial court.
We agree with the trial judge, therefore, that the total amount due plaintiff under the subcontract, computed on the basis of the number of bricks actually laid by plaintiff, is $18,378.27. Southern, however, is entitled to the following credits to be applied on that indebtedness: a credit of $14,822.56 which was paid to plaintiff in cash to be applied on the subcontract; a "back charge" of $503.00 for caulking; and a back charge of $800.00 for washing bricks. This leaves a net balance of $2,252.71 owed by Southern to plaintiff under the subcontract.
Plaintiff further claims, however, that it is entitled to recover from defendants additional sums for extra work allegedly performed by plaintiff at the instance and request of Southern. Defendants resist payment of any additional amount as "extras" on the ground that no alterations or changes were authorized or approved in writing by the general contractor, and the amount to be paid by the contractor for extra work was never specified in writing, as required by the subcontract.
Article IV of the subcontract between plaintiff and Southern provides:
"ARTICLE IV. The Subcontractor hereby agrees to make any and all changes, furnish the materials and perform the work that the Contractor may require without nullifying this Agreement, at a reasonable addition to or deduction from, the contract price hereinafter named, and pro rata to the same. NO ALTERATIONS OR CHANGES SHALL BE MADE, HOWEVER EXCEPT UPON THE WRITTEN ORDER OF THE CONTRACTOR. The amount to be paid by the Contractor, or allowed by the Subcontractor by virtue of such alterations shall be stated in such order."
It has been held in Louisiana that when a building contract provides that no claims for extra work shall be allowed unless written authority is given, that provision is binding upon the parties to the agreement, so that in the absence of a waiver of that stipulation no recovery can be had for extra work performed without written authority. Monarch v. Board of Com'rs of McDonough School Fund of City of New Orleans, 49 La.Ann. 991, 22 So. 259; French Market Homestead Ass'n v. Usner, 170 La. 783, 129 So. 202; Ault & Burden v. Shepherd et al., La.App. 2 Cir., 8 La.App. 595. However, recovery for extras based on parol evidence has been permitted in spite of a stipulation that authority for extra work must be in writing: (1) when the alteration was necessary and had not been foreseen (Groner v. Cavender, 2 Cir., 16 La.App. 565, 133 So. 825); (2) when the alteration was so great that it cannot be supposed to have been made without the knowledge of the owner (Peterson v. Peralta, Orl.App., 3 La. *116 App. 516; Groner v. Cavender, supra); (3) when the owner was aware of the extra work and made no objection to it (Wellman v. Smith, 114 La. 228, 38 So. 151; Groner v. Cavender, supra); and (4) when there was a subsequent verbal agreement authorizing the work (Harvey v. Mouncou, Orl.App., 3 La.App. 231; Groner v. Cavender, supra; Gross v. Breaux, La.App., 4 Cir., 144 So.2d 763). See also LSA-C.C. Articles 2763 and 2764; 7 La.Law Review 571, et seq.; Hinricks v. Edmonds Realty & Investment Co., Orl.App., Teissier's Digest of the Unreported Decisions of the Court of Appeal (1923) 36, 38; and Meaux v. Southern Construction Corporation, La.App. 3 Cir., 159 So.2d 156.
In Wellman v. Smith, supra, our Supreme Court held:
"The contract provided that no change in the plan, and extra work in that connection, would be paid for unless the work was done in accordance with written order.
"The owner cites Maas v. Succession of Hernandez, 48 La.Ann. 264, 19 South. 269, and Monarch & Kaiser v. Board, 49 La.Ann. 991, 22 South. 259, in support that $200 for extra work should not be allowed.
"In the cases cited, the testimony did not prove that the owner knew anything about the extra work. It follows that he had not assented to it. Here the work was done. The owner was frequently about the building, and saw the improvements as they were made. It is not shown that the least objection was ever made, nor that they have not received full consideration.
"Under the circumstances, the claim is due and should be paid." (38 So. 152).
In Groner v. Cavender, supra, the Court of Appeal, Second Circuit, quoting with approval from another decision, said:
"`* * * notwithstanding a clause in a building contract providing that no claim for extra work shall be made or paid unless the extra work was ordered in writing, an undertaker may prove by parol and will recover for extra work, when it is shown that the owner was aware of the work and made no objections to it, however dangerous such a doctrine might prove to owners, who see the work being done, but have no idea that it is extra, or will be charged for, over and above the contract price.'" (133 So. 828, 829).
In Gross v. Breaux, supra, the Fourth Circuit Court of Appeal stated:
"We think the correct rule of law is laid down in Groner v. Cavender, 116 La.App. 565, 133 So. 825, which says a contractor may recover for extra labor and material furnished in compliance with the owner's wishes and parol evidence may be used to prove it, in spite of the fact the contract calls for the extras to be in writing." (144 So.2d 765).
And, in Meaux v. Southern Construction Corporation, supra, which involved the same defendants, the same general contract and the same type of subcontract, we said:
"The general rule in Louisiana is that a provision in a written construction contract that no claims for extra work or materials shall be allowed unless made in writing is valid and binding upon the parties, and that when the contract so provides, and there is no written order for such extras, no recovery can be had for them in the absence of a waiver of that stipulation. (Citations omitted). Although it has been held generally that parol evidence is inadmissible in such cases to prove the performance of the extra work (Ault & Burden v. Shepherd et al., supra), parol evidence has been admitted and considered in some instances, particularly where the extra work has been so great that it cannot be supposed to have been made without the knowledge of *117 the owner. See Peterson v. Peralta, 3 La.App. 516, and authorities cited therein." (159 So.2d 161).
In the instant suit plaintiff itemizes his claim for extra work performed at the instance or request of Southern, as follows:

Item 2-A Removing dirt from foundations ------------------------------ $ 480.71
Item 2-B Supplying water to job site ---------------------------------- 310.30
Item 2-C Sorting and hand picking bricks ------------------------------ 950.66
Item 2-D Hauling bricks ----------------------------------------------- 257.50
Item 2-E Cutting and laying of ¾-inch bricks around doors ------ 621.04
Item 3 Federal and State taxes and insurance ------------------------ 366.83
Item 4 10% profit to subcontractor ---------------------------------- 262.02
 _________
 Total extras ---------------- $3,249.06

With reference to the claim hereinabove first listed, the evidence shows that when it became time for plaintiff to lay the bricks called for in the subcontract a considerable amount of dirt was found on top of the foundations of about two-thirds of the houses on which the brickwork was to be done. It was necessary for plaintiff to incur the expenses which are claimed in moving the dirt before its employees could proceed with the bricklaying. No explanation was given as to why the dirt was there, and when plaintiff demanded that Southern remove the dirt Southern's superintendent authorized plaintiff to move it and to back charge Southern for the cost of the labor. A masonry expert testified that it was not the duty of the bricklaying contractor to remove dirt which had been placed on foundations by others. Although no written order was issued by Southern for the removal of the dirt, the evidence shows that this additional work was necessary and had not been foreseen, and that the general contractor not only was aware of the fact that the extra work was being done and failed to object, but that Southern's superintendent actually directed plaintiff to do it. Under those circumstances, we think the trial judge correctly held that plaintiff was entitled to recover the sum of $480.71, over and above the amount due on the subcontract, for the expenses incurred by it in removing this dirt.
Item 2-B covers the extra expenses alleged to have been incurred by plaintiff in hauling water from hydrants on the north and south boundaries of the project to the various houses. Plaintiff contends that Southern agreed orally to pipe water to every third house for the use of plaintiff in laying and washing bricks, while defendant Southern denies that there was any such agreement. The written subcontract is silent as to the furnishing of water, and the testimony is conflicting as to whether Southern agreed to provide water as contended by plaintiff. The trial judge held that plaintiff had failed to prove an agreement by Southern to furnish water, and he thereupon rejected plaintiff's demand for this item. We cannot say that the trial judge erred in arriving at that conclusion.
The claims identified as Items 2-C and 2-D, aggregating $1,208.16, are for extra labor and hauling expenses allegedly incurred by plaintiff because of Southern's failure to place a sufficient number of bricks of the proper color adjacent to the particular houses on which they were to be used, thus making it necessary for plaintiff to incur substantial added expense in sorting out and moving the bricks to the proper places. The trial court rejected the demands of plaintiff for these items, holding that the general contractor had substantially performed its obligations under the subcontract, that the subcontract contemplated that plaintiff would be required to do a certain amount of sorting and hauling incidental to the laying of the bricks, and that the expenses incurred by plaintiff along that *118 line constituted an incidental part of the work under the subcontract. We think the evidence supports that conclusion.
With reference to the next item claimed by plaintiff, the trial judge said: "The plaintiff claims under Item 2-E $621.04 for the cost of cutting and laying of ¾ inch bricks around the doors on A type houses required by the general contractor, but not by the plans and specifications. The evidence shows that on the A type houses, after the prefabricated sections were constructed for the door openings, the wall of bricks did not lay immediately adjacent to the door frame, leaving a small space, which had to be filled with some material. Considerable discussion was had on this subject, which apparently was not foreseen. It was testified that the cost of removing the doors would be prohibitive under the circumstances, and the general contractor instructed the plaintiff to fill the space with ¾ inch bricks on each of these houses. The expense involved resulted not only from the laying of these bricks, but from the necessity to have bricks cut to fit the small space. Undoubtedly, the existence of this small space between the brick wall and the door frame was contemplated by neither party to the subcontract. Mr. Miller, the masonry expert, testified that the plans did not evidence any ninety degree turn of the brick wall in order to fill such a space. Mr. Grein and his superintendent, Mr. Hoffpauir, contended that the Plans required the filling of this opening with brick. Mr. Hoffpauir confirmed the fact that he instructed the plaintiff to put brick in these openings, and the plaintiff did so under protest. An examination of the plans reveals that the brick wall goes straight in to the wall containing the door frame, without any turn in the brick toward the door frame, and the Court concludes that the filling of these spaces was an unforeseeable requirement, not called for by the plans and specifications under plaintiff's subcontract." And, after citing authorities which we have already discussed, the trial court continued, "In the present case, despite the fact that the subcontract required a written order from the contractor for any alterations or changes, with a statement of the amount to be allowed for the change, it was established that the change involved here was necessary, had not been foreseen, and that the general contractor not only was aware of the work involved, but specifically directed that it be done. Accordingly, the plaintiff will be allowed the sum of $621.04 as the expense incurred in this extra work." We agree with the conclusion reached by the trial judge.
The trial judge allowed plaintiff the aggregate sum of $1,101.75 for extra work performed over and above that called for by the subcontract, this being the total of the two claims designated as Items 2-A and 2-E. In addition thereto, and pursuant to the claim designated as Item 3, the trial judge allowed 9 percent of the above amount for workmen's compensation insurance premiums and for taxes. This allowance was based on the testimony produced by plaintiff that it incurred the following additional expenses in connection with the extra work: 3 percent for Federal and Social Security taxes; 3 percent for State taxes; and 3 percent for premiums due on workmen's compensation insurance. The trial court also, pursuant to the claim listed as Item 4, allowed 10 percent of the extra expense incurred for profit to the subcontractor on a quantum meruit basis. The total extras allowed as claimed in Items 3 and 4 amounted to $209.33. And finally, the trial judge allowed plaintiff $36.75, being the expense incurred by it in preparing and recording its claim or lien. We agree with the trial judge that plaintiff is entitled to recover these sums.
The total amount of the judgment rendered by the trial court, as the amount due plaintiff under the subcontract plus all extras, amounts to the sum of $3,600.54. We find this award to be supported by the evidence.
The trial judge rejected plaintiff's demands for damages based on alleged injury to its reputation and loss of business. On *119 this appeal the plaintiff-appellee abandons that portion of its original demands.
For the reasons herein assigned, the judgment appealed from is affirmed. All costs of this appeal are assessed to the appellants.
Affirmed.